[No. S110301. Mar. 14, 2005.]

RICHARD DONALDSON, Plaintiff and Respondent, v.
NATIONAL MARINE, INC., Defendant and Appellant.

504

COUNSEL

Rushford & Bonotto, Phillip R. Bonotto, Brian M. Taylor, John P. Carty III and Carla L. Johansen for Defendant and Appellant.

Wartnick, Chaber, Harowitz & Tigerman, The Wartnick Firm, Harry F. Wartnick, Martha A. H. Berman, Stephen M. Tigerman, Richard A. Brody; Law Offices of Daniel U. Smith and Daniel U. Smith for Plaintiff and Respondent.

## OPINION

**CHIN, J.**— ■ In this case, involving a maritime injury occurring beyond state borders, we consider whether the trial court had jurisdiction to entertain a wrongful death claim under the federal Jones Act (46 U.S.C. Appen. § 688 et seq.), legislation that provides remedies for injury or death to seamen occurring in the course of their employment. We conclude that indeed our state courts possess concurrent jurisdiction with federal courts over such Jones Act claims, and that the trial court properly exercised such jurisdiction in this case.

### FACTS

The following uncontested facts are taken largely from the Court of Appeal's decision in this case. National Marine, Inc. (defendant) appeals from a judgment, entered after a jury trial, awarding Richard Donaldson (plaintiff) $1,616,400 on an action for the wrongful death of plaintiff's adoptive father, a Tennessee resident, Albert Pavolini (decedent). Decedent spent his adult working life on or around boats and ships. He served in the United States Navy from 1942 until 1964. He worked for Military Sea Transport from 1966 to 1967; he worked for National Marine (then Cardinal Carriers) from 1967 to 1981; and he worked for other private shipping companies from 1980 until he retired a few years later. Decedent's duties both for the Navy and for the private shipping companies included installing or repairing insulation around pipes and waterlines, and he was exposed to asbestos both during his naval career and later, while working for the private companies.

Decedent also began smoking at age 16 and smoked until 1984. In May 1997, he was diagnosed with lung cancer. He died in 1998 of complications resulting from the cancer. These proceedings began before decedent's death,

when he filed suit against multiple defendants, including several tobacco companies, on the theory that his lung cancer was caused by a combination of his use of tobacco and his exposure to asbestos during his naval career and his employment with the private shipping companies. Although it is unclear from the record, it appears that the named defendants originally included companies that manufactured or supplied products containing asbestos to the Navy or to the private shipping companies. In any event, the parties ultimately stipulated to orders severing the tobacco defendants from the asbestos defendants for separate trial, and we are not concerned with those proceedings here.

On September 25, 1999, plaintiff filed suit against defendant as the successor to Cardinal Carriers, seeking damages for decedent's death under the Jones Act, and under the maritime doctrine of unseaworthiness. Defendant moved to dismiss on the theory that the state court lacked subject matter jurisdiction over plaintiff's maritime claims because decedent's work for Cardinal Carriers took place outside of California's territorial waters. The motion was denied, and the matter went to trial.

At trial, defendant did not dispute that decedent died of lung cancer. It defended on the theory that the cancer was unrelated to his exposure to asbestos, and resulted from his history of smoking. Defendant also theorized that even if exposure to asbestos was a factor in decedent's lung cancer, tobacco was a greater factor. Finally, it argued that in any event decedent's exposure to asbestos during his naval career was far greater than his exposure to asbestos while working for Cardinal Carriers.

The jury rejected plaintiff's unseaworthiness claims, and they are not before us. It found, however, that defendant was negligent under the Jones Act, and that its negligence was a cause of decedent's death. The jury further fixed the damages at $1,796,000, and apportioned fault between decedent, defendant, the Navy and the tobacco companies, at 10 percent for decedent, and 30 percent each for defendant, the Navy, and the tobacco companies.

Defendant appealed from the judgment. The trial court later denied defendant's motions for a new trial and for judgment notwithstanding the verdict, but granted plaintiff's motion to amend the judgment to make defendant liable for 90 percent of the jury's verdict. The court found that the Navy and the tobacco companies were immune from these claims, and that defendant, accordingly, was liable for the full amount of damages, less the 10 percent attributable to decedent's fault. The court therefore corrected its judgment to

increase the award against defendant to $1,616,400. Defendant filed a second appeal from the court's order, and those appeals were consolidated.

The Court of Appeal ruled in favor of plaintiff on the jurisdictional issue, concluding that "California's courts have subject matter jurisdiction over deaths occurring outside of the state's territorial limits, although they may be required to apply the law of the jurisdiction where the wrong occurred. For purposes of this case, that law is the Jones Act. As the Jones Act recognizes a claim for wrongful death, the superior court was entitled to hear [plaintiff's] claims." We granted review limited to this jurisdictional issue and will affirm the judgment of the Court of Appeal.

*DISCUSSION*

1. *May California Courts Properly Exercise Concurrent Jurisdiction over Jones Act Cases?*

■ Initially we consider whether California state courts properly may exercise concurrent jurisdiction over Jones Act cases. The Jones Act was passed in 1920 as the Merchant Marine Act to extend the protections of the Federal Employers' Liability Act (FELA, 45 U.S.C. § 51 et seq.) to seamen. The act provides seamen or their survivors a remedy against employers for negligence resulting in injury or death in the course of employment. (See 46 U.S.C. Appen. § 688.) Companion legislation, the Death on the High Seas Act (DOHSA, 46 U.S.C. Appen. § 761), was enacted, also in 1920, to provide the representatives of deceased seamen whose deaths occurred more than three miles from shore the right to sue in federal court for wrongful death damages.

■ As defendant acknowledges, the federal courts have determined that both the Jones Act and DOHSA are governed by separate "saving to suitors" clauses that preserve concurrent state court jurisdiction over claims coming under these statutes. (See, e.g., *Offshore Logistics, Inc. v. Tallentire* (1986) 477 U.S. 207, 221–223 [91 L.Ed.2d 174, 106 S.Ct. 2485] (*Offshore Logistics*); *Engel v. Davenport* (1926) 271 U.S. 33, 37 [70 L.Ed. 813, 46 S.Ct. 410] (*Engel*).) With respect to actions brought under the Jones Act, although a statute vests federal courts with "exclusive" admiralty or maritime jurisdiction, that same statute "sav[es] to suitors in all cases all other remedies to which they are otherwise entitled." (28 U.S.C. § 1333(1).) Additionally, FELA, which is incorporated by reference into the Jones Act, includes the provision that "[t]he jurisdiction of the courts of the United

States under this act *shall be concurrent* with that of the courts of the several States." (45 U.S.C. § 56, italics added.) The *Engel* court concluded that, by reason of the predecessors to the foregoing statutory provisions, maritime law rights of action may be enforced in either state or federal courts. (*Engel, supra,* 271 U.S. at pp. 37–38.)

To support its view that California lacks jurisdiction over Jones Act cases, defendant relies on a DOHSA case, *Chromy v. Lawrance* (1991) 233 Cal.App.3d 1521 [285 Cal.Rptr. 400] (*Chromy*), which held that federal courts have exclusive jurisdiction over DOHSA wrongful death actions arising outside of territorial waters in the absence of enabling *state* statutory provisions. *Chromy* reasoned that suits under DOHSA may only be tried in state courts whose states have wrongful death or survivor statutes *expressly applicable to death on the high seas. Chromy* relied primarily on the wording of DOHSA's own saving clause, preserving state rights of action or remedies for death under "provisions of any State statute." (46 U.S.C. Appen. § 767.) Because California's wrongful death statute (former Code Civ. Proc, § 377, now § 377.60 et seq.) was silent regarding its extraterritorial effect, *Chromy* held that the plaintiff's suit must be dismissed. (*Chromy,* 233 Cal.App.3d at pp. 1526–1527; see also *Gordon v. Reynolds* (1960) 187 Cal.App.2d 472, 477 [10 Cal.Rptr. 73]; *Hughes v. Unitech Aircraft Service, Inc.* (Fla.Dist.Ct.App. 1995) 662 So.2d 999, 1001.)

We find *Chromy* and other DOHSA cases to be of little value here. First, as the Court of Appeal in this case noted, *Chromy's* analysis has been seriously questioned by a more well-reasoned appellate decision holding that, in light of the need for uniformity of remedy and to facilitate effective and just administration of DOHSA's remedies, state court jurisdiction to enforce federal DOHSA claims does not depend on specific state statutory authority. (*Garofalo v. Princess Cruises, Inc.* (2000) 85 Cal.App.4th 1060, 1082 [102 Cal.Rptr.2d 754].) Second, *Chromy,* decided under DOHSA, is inapposite here; DOHSA, with its own saving clause (46 U.S.C. Appen. § 767), is not governed by the differently worded saving clause and mandatory concurrent jurisdiction statute applicable in Jones Act/FELA cases (28 U.S.C. § 1333; 45 U.S.C. § 56).

Defendant's primary position, adopting *Chromy's* analysis discussed above, is that "the 'saving to suitors' clause of the Judiciary Act of 1789 'saves' only those rights of action recognized by state law." In other words, in defendant's

view, a state may elect not to provide a forum for recovery under the Jones Act. Defendant notes that in *Offshore Logistics*, the high court explained that "Louisiana had legislative jurisdiction to extend its wrongful death statute to remedy deaths on the high seas and that Louisiana in fact intended its statute to have that effect." (*Offshore Logistics, supra*, 477 U.S. at p. 211.) By contrast, according to defendant, California has never expressed such a legislative intent. Defendant observes that the right to sue for wrongful death is purely statutory, as it did not exist at common law. (*Justus v. Atchison* (1977) 19 Cal.3d 564, 572 [139 Cal.Rptr. 97, 565 P.2d 122]; *Chavez v. Carpenter* (2001) 91 Cal.App.4th 1433, 1438–1439 [111 Cal.Rptr.2d 534].) Accordingly, the right to sue for wrongful death is limited by the statutory provisions creating the remedy. (*Justus v. Atchison, supra*, 19 Cal.3d at pp. 572, 577.)

■   But plaintiff is not suing for wrongful death under state law. He is seeking to enforce a federal cause of action under the Jones Act. As we have seen, the Jones Act incorporates by reference a provision of FELA that "[t]he jurisdiction of the courts of the United States under this act *shall be concurrent* with that of the courts of the several States." (45 U.S.C. § 56, italics added.) The high court cases interpreting this provision make clear that federal supremacy principles prohibit state courts of general jurisdiction from refusing to entertain suits under FELA solely because suit is brought under federal law (*McKnett v. St. Louis & San Francisco R. Co.* (1934) 292 U.S. 230, 233–234 [78 L.Ed. 1227, 54 S.Ct. 690] (*McKnett*)) or because enforcement of the federal right of action is deemed contrary to state policy or apt to cause inconvenience and confusion because of differing state and federal standards (*Mondou v. New York, N.H. & H.R. Co.* (1912) 223 U.S. 1, 57–58 [56 L.Ed. 327, 32 S.Ct. 169] (*Mondou*)). Thus, the high court has held that states must entertain suits timely filed under the Jones Act despite state limitation statutes that might otherwise bar suit. (*Engel, supra*, 271 U.S. at pp. 37–39.)

■   A more recent high court case, *Howlett v. Rose* (1990) 496 U.S. 356, 369–372 [110 L.Ed.2d 332, 110 S.Ct. 2430] (*Howlett*), confirmed that generally when a statute confers concurrent jurisdiction over a federal right of action, federal law becomes enforceable in state courts regardless of contrary state policy. This follows because the federal Constitution's supremacy clause makes that law "the supreme Law of the Land" and as binding on the citizens and courts as state laws. (*Id.* at p. 367.) As a consequence, the high court explained, a state having jurisdiction over the parties may not refuse to enforce a federal right in the absence of a valid excuse consistent with federal

law. (*Id.* at pp. 369–372, citing *Mondou, supra,* 223 U.S. at p. 57, and *McKnett, supra,* 292 U.S. at pp. 230, 233–234.) According to *Howlett,* a valid excuse for declining jurisdiction might involve "a neutral rule of judicial administration," such as a rule permitting dismissal of claims between nonresidents, or application of a doctrine such as forum non conveniens. (*Howlett, supra,* 496 U.S. at pp. 374–375.) Defendant points to no such valid excuse that would permit California courts to decline jurisdiction in Jones Act cases. (See also *In re Chimenti* (6th Cir. 1996) 79 F.3d 534, 537–538 [plaintiff seeking to enforce federal maritime law right of action may proceed in state or federal court, and action is not subject to removal].)

Plaintiff observes that the California wrongful death statute contains no provision limiting the right of action to deaths occurring within the state's territorial waters. (See Code Civ. Proc., § 377.60, et seq.) Plaintiff also notes the broad conferral of jurisdiction in the state Constitution and statutes. (See Cal. Const., art. VI, § 10 [except as otherwise provided, "[s]uperior courts have original jurisdiction in all other causes"]; Code Civ. Proc., § 410.10 ["A court of this state may exercise jurisdiction on any basis not inconsistent with the Constitution of this state or of the United States"].) Indeed, plaintiff cites numerous cases in which California courts have exercised such maritime or Jones Act jurisdiction. (See, e.g., *Gault v. Modern Continental/Roadway Construction Co., Inc. Joint Venture* (2002) 100 Cal.App.4th 991, 997 [123 Cal.Rptr.2d 85]; *Hutchins v. Juneau Tanker Corp.* (1994) 28 Cal.App.4th 493, 495, 499 [33 Cal.Rptr.2d 542]; *D'Aquisto v. Campbell Industries* (1984) 162 Cal.App.3d 1208, 1212–1213 [209 Cal.Rptr. 108]; *Baptiste v. Superior Court* (1980) 106 Cal.App.3d 87, 94 [164 Cal.Rptr. 789].)

For all the reasons expressed above, we see no valid California impediment or "excuse" to preclude the exercise of state court jurisdiction in Jones Act cases.

2. *Did California Courts Properly Exercise Concurrent Jurisdiction in This Case?*

Defendant also argues that, assuming California courts *may* exercise concurrent jurisdiction to hear wrongful death claims under the Jones Act, plaintiff's suit should have nonetheless been dismissed because California lacked sufficient jurisdictional interest *in this case* to adjudicate his Jones Act claim. Defendant observes that neither decedent Paviolini nor plaintiff, his adoptive son, was a California resident, and the allegedly tortious conduct occurred outside of California. Although plaintiff's complaint alleged that

defendant is a corporation regularly doing business in California, defendant complains that plaintiff "has failed throughout the action to cite facts supporting that contention." In such circumstances, according to defendant, California was an improper forum to hear the case.

Plaintiff responds by observing that this "insufficient contacts" argument goes more to the question of California's *personal jurisdiction* over defendant, an objection it concededly waived by accepting personal service and making a general appearance in the case. (Code Civ. Proc., § 410.30, subd. (b); see, e.g., *People v. Ciancio* (2003) 109 Cal.App.4th 175, 192–193 [134 Cal.Rptr.2d 531]; 2 Witkin, Cal. Procedure (4th ed. 1996) Jurisdiction, § 184, pp. 747–748, and cases cited.) Indeed, the case on which defendant primarily relies in this regard, *Star Aviation, Inc. v. Superior Court* (1977) 73 Cal.App.3d 807 [141 Cal.Rptr. 13], was a *personal* jurisdiction case arising from a nonresident corporation's "mo[tion] to quash service of summons upon it for lack of jurisdiction over its person." (*Id.* at p. 810.) The decision was confined to determining whether the defendant had sufficient presence or contacts in this state to justify requiring it to submit to jurisdiction here.

█ Generally, subject matter jurisdiction is the court's power to hear and resolve a particular dispute or *cause of action*, while personal jurisdiction relates to the power to bind a particular *party*, and depends on the party's presence, contacts, or other conduct within the forum state. (See *Greener v. Workers' Comp. Appeals Bd.* (1993) 6 Cal.4th 1028, 1034–1035 [25 Cal.Rptr.2d 539, 863 P.2d 784]; 2 Witkin, Cal. Procedure, *supra*, Jurisdiction, §§ 10–11, pp. 555–556; *id.*, §§ 110–111, pp. 648–651.) The issue before us involves the subject matter jurisdiction of California state courts over Jones Act claims, not personal jurisdiction over this defendant. In light of the state Constitution's broad conferral of jurisdiction (Cal. Const., art. VI, § 10), we see no fundamental jurisdictional impediment to allowing plaintiff to bring his Jones Act claim in California courts.

Defendant disclaims any intent to argue that California was an inconvenient forum under the facts. Such an argument would relate more to venue than subject matter jurisdiction, and again would have been waived by failing to assert it at trial. (See Code Civ. Proc., § 396b, subd. (a); *People v. Simon* (2001) 25 Cal.4th 1082, 1096 [108 Cal.Rptr.2d 385, 25 P.3d 598] [venue is not jurisdictional], 1102 [waiver rule in civil cases]; *Cooney v. Cooney* (1944) 25 Cal.2d 202, 207–208 [153 P.2d 334].)

*CONCLUSION*

The judgment of the Court of Appeal is affirmed.

George, C. J., Kennard, J., Baxter, J., Werdegar, J., Brown, J., and Moreno, J., concurred.