[No. B193502. Second Dist., Div. Three. May 7, 2008.]

PORFIRIO SERRANO et al., Plaintiffs and Appellants, v.
STEFAN MERLI PLASTERING COMPANY, INC., Defendant;
COAST COURT REPORTERS, Objector and Respondent.

1018

COUNSEL

Law Offices of David B. Bloom, Edward Idell, Stephen Monroe and James Adler for Plaintiffs and Appellants.

John L. Dodd & Associates, John L. Dodd; and John J. Veth for Objector and Respondent.

Jay-Allen Eisen Law Corporation, Jay-Allen Eisen and C. Athena Roussos for California Court Reporters Association as Amicus Curiae on behalf of Objector and Respondent.

Howard Advocacy and Edward P. Howard IV for Deposition Reporters Association of California as Amicus Curiae on behalf of Objector and Respondent.

McKenna Long & Aldridge, Jeffrey P. Altman and Robert S. Schuda for National Court Reporters Association as Amicus Curiae on behalf of Objector and Respondent.

OPINION

**CROSKEY, J.**—Porfirio Serrano and Lourdes Serrano appeal orders requiring them to pay the fees charged by Coast Court Reporters (Coast) for copies of deposition transcripts in a pending action and denying their request to relieve them of fees charged for expedited service. Coast had agreed to provide the copies to the Serranos on the condition that the Serranos and Coast would be bound by the trial court's ruling as to the reasonableness of the fees. The trial court found that the expedited service fees were "unconscionable," but concluded that it had no authority to limit the fees charged by Coast and ordered the Serranos to pay the fees.

█ We conclude that Code of Civil Procedure[1] section 2025.510, subdivision (c), and the court's inherent authority to control its ministerial officers and other persons connected with a judicial proceeding in furtherance of justice (§ 128, subd. (a)(5)), authorize the court to require a deposition reporter to provide a copy of a deposition transcript to a nonnoticing party in a pending action for a reasonable fee which, in the absence of an agreement between the interested parties, may be set by the court upon a proper evidentiary showing. We also reject Coast's arguments of nonappealability, lack of standing, lack of jurisdiction, and mootness. We therefore will reverse the orders with directions.

---

[1] All statutory references are to the Code of Civil Procedure unless stated otherwise.

## *FACTUAL AND PROCEDURAL BACKGROUND*

The Serranos filed a complaint seeking damages for personal injuries against Stefan Merli Plastering Company, Inc., in November 2004. Defendant noticed the depositions of several of the Serranos' expert witnesses, including Robert Audell. The Audell deposition took place on June 26, 2006, and was reported by a certified shorthand reporter employed by Coast. Counsel for the Serranos requested a certified copy of the transcript. The trial was scheduled to begin on July 25, 2006.

On June 29, 2006, Coast informed the Serranos' counsel that defendant had requested expedited preparation of the transcript of the Audell deposition and asked if the Serranos' counsel would like an expedited copy. The Serranos' counsel requested an expedited hard copy and also requested an electronic version of the transcript to be sent by e-mail. Coast stated that it would send a hard copy COD and would e-mail an ASCII version only after receiving by facsimile a copy of the check in payment to Coast. Coast then billed the Serranos' counsel $373.65 for a certified copy of the Audell deposition transcript consisting of 141 pages, plus $14.00 for 28 pages of exhibits, $261.56 for "EXPEDITE CHARGE-4 DAY," $10 to e-mail an ASCII version, and $40.00 for "Shipping/Administration." Coast agreed to waive the COD requirement upon receipt of "fax confirmation of check being mailed today."

The Serranos' counsel protested the charge for expedited service and stated that defendant should bear the cost of transcription, including any fee for expediting the transcription. Coast responded that the expedited service fee was proper, that its "normal turnaround on transcripts is ten business days," and that counsel would receive a certified copy of the transcript on an expedited basis only upon payment of the additional fee.

The Serranos filed an ex parte application on July 5, 2006, for an order requiring Coast to provide a copy of the Audell deposition transcript without charging any expedited service fee. An attorney for Coast appeared and opposed the application. The trial court scheduled further briefing and a hearing to take place on July 20, 2006. The Serranos and Coast agreed that the court would determine "the validity and reasonableness" of the expedited service fee and that the ruling would govern the fees for all other deposition transcripts in this action.[2] Based on that agreement, Coast waived its COD requirement and delivered copies of the deposition transcripts to the Serranos' counsel.

---

[2] The record on appeal contains neither a reporter's transcript of such an oral agreement nor a written stipulation to that effect. A notice of ruling filed by the Serranos on July 7, 2006, after the hearing on their ex parte application, stated that the depositions to be taken before the

Coast filed an opposition to the Serranos' motion. Coast's owner declared that an expedited original deposition transcript or expedited certified copy increased the workload of the reporter and office production staff, that the fee per page of a certified copy was less than one-half the fee per page of an original transcript, and that the fee to expedite the preparation of either an original transcript or a certified copy was based on a percentage of the fee for the respective transcript. The owner declared that the fee per page of an original deposition transcript depended on the type of deposition, and Coast acknowledged that it charged a higher fee per page for the deposition of an expert witness than for the deposition of a nonexpert witness. The owner declared that the fee to expedite the preparation of either an original or a certified copy was 100 percent of the fee for the transcript for delivery the next business day, 90 percent for two business days, 80 percent for three business days, and 70 percent for four business days.

Coast's owner declared: "As a result of the certification requirements imposed by California Code of Civil Procedure, the certified copy is more than a mere copy . . . . Production of a certified copy requires the following individual steps over and above the requirements of the original transcript: printing, detailing (to ensure accuracy), binding, the creating of an ASCII or CD to accompany the certified copy, the creation of a condensed version of the certified copy, copying and detailing of exhibits, binding of exhibits and creating a separate ASCII or CD of exhibits if necessary, labeling, invoicing, shipping, and coordinating COD requirements." Coast cited *Urban Pacific Equities Corp. v. Superior Court* (1997) 59 Cal.App.4th 688 [69 Cal.Rptr.2d 635] (*Urban Pacific*) for the proposition that certified shorthand reporters who are not acting as official court reporters "are free to charge all the market will bear" (*id.* at p. 692).

The trial court stated to the Serranos' counsel at the hearing on July 20, 2006: "I would love to give you relief. I don't think I can. So take it up. Maybe, you know, one of the divisions up there will feel sympathetic." After further argument, the court stated: "I've given you an offer. The court up there is going to know that, you know, we need help on this. I don't think it's my place to substitute you know—not substitute. According to what *Urban* said, they can charge what the traffic will bear."

---

scheduled hearing on the Serranos' motion "shall be governed by the court's ruling on expedite fees rendered on July 20, 2006." Coast's opposition to the Serranos' motion for relief from the expedited service fees similarly stated that the Serranos and Coast had "agreed to be bound by the Court's ruling on the issue of the validity and reasonableness of the expedite charge pertaining to all depositions in the underlying action."

The following exchange occurred at the hearing:

Coast's counsel: "Your honor, you offered the plaintiff to appeal the order, but my—"

The court: "Well, to take a writ."

Coast's counsel: "I understand the writ, but my understanding of our discussion on July 5th was that both parties agreed, since we are not a party to the action, that, in this case, you were basically acting as a mediator."

The court: "Well, that—"

Coast's counsel: "And we both agreed to be bound by whatever you determined, not to have the option to go on and take a writ with the appellate court."

The Serranos' counsel: "If I—"

Coast's counsel: "I would ask that this court order that the funds be paid."

The court: "That's the effect of my order. I'm ordering them to pay them."

Coast's counsel: "And just so the record is clear, your honor, the expedite fees $2,871.57. The basic charge, which they haven't paid yet, either, is 7,647.30. The total amount due is $9,418.87."

The court: "I know, the bills are attached to the—"

Coast's counsel: "Yes, they are, your honor. But, normally, since they're not a client of Coast Court Reporters, everything would be sent C.O.D. In this case, Coast Court Reporters granted an absence of that in light of your—"

The court: "That was the agreement, that I would make a ruling. I made the ruling. I can't give you relief, so you better pay it."

The Serranos' counsel: "Your honor, if I may address this? I was the party in the chambers when the discussion was made. I said, yes, we would be bound in each one of the succeeding depositions, because I did not want it to be held up since we do have an upcoming trial. I did not waive our right to seek a writ, nor did I waive the right to appeal."

The court: "I know."

Coast's counsel: "Well, we will argue jurisdiction at another point, your honor, but I still would ask that this court order that they pay. And we'll discuss—"

The court: "Okay. And that was the agreement, that it be paid."

The minute order entered on July 20, 2006, stated: "The motion is denied. There appears to be nothing this court can do. (See Urban Pacific Equities Corp. v. Superior Court[, *supra*,] 59 Cal.App. 4th 688.) If the court had the power to do so, it would order the second copy of the transcript to be prepared at the normal cost plus any additional charges necessitated by producing the second copy: Only the original; and first copy is expedited. From that point on everything else is merely a copy. As in Urban, this court feels the practice employed by the court reporter in this case is unconscionable. However, as in Urban this court is without the power to require the court reporter to charge something other than what the traffic will bear. Perhaps an appellate court will have a different view."

The Serranos filed an ex parte application on July 25, 2006, for an order staying the order to pay for the transcripts pending their application to the Court of Appeal for extraordinary writ review. The trial court denied the application. Counsel for the Serranos stated that he would pay the bill without waiving the right of appellate review. Counsel for Coast stated that he did not agree that the Court of Appeal had jurisdiction and asked the trial court to order that payment be made by Thursday, July 27, 2006.[3] The court stated: "I will order it paid by Thursday. That was the agreement. Basically, I was going to hear it, and both sides agreed to be bound by what I said. I heard it. I have said it. Pay it Thursday." The Serranos' counsel paid $9,418.87, the full amount charged by Coast for certified copies of the Audell deposition transcript and 12 other deposition transcripts, including the expedited service fees, on July 26, 2006.

The Serranos filed a notice of appeal on August 25, 2006, from (1) the minute order of July 20 denying their motion for relief from the expedited service fees; (2) the oral order of July 20 requiring the Serranos to pay the bill presented by Coast; and (3) the oral order of July 25 requiring the Serranos to pay the bill by July 27.

The Serranos petitioned the Court of Appeal for an extraordinary writ on August 25, 2006, seeking to compel the trial court to vacate its denial of the

---

[3] Counsel for Coast stated: "As I mentioned before, we do not agree that jurisdiction lies at the appellate court or that a writ was agreed to or allowed in this case, but we will argue that some place else and I would ask so we don't have to come back in another week that the court actually order that payment be made on Thursday as Mr. Monroe said. He could pay the entire $9,418.17 [*sic*]."

Serranos' motion for relief from the expedited service fees and exercise its discretion to determine the amount of reasonable fees, and to vacate its orders to pay the bills in full. We summarily denied the petition on September 20, 2006.

The Serranos and defendant entered into a settlement agreement. The court dismissed the action against defendant with prejudice on September 22, 2006, pursuant to the settlement. The order of dismissal states that the dismissal is without prejudice to the positions of the Serranos and Coast with regard to the dispute between them and does not deprive the trial court of subject matter jurisdiction to resolve that dispute if the Court of Appeal determines that the trial court has the jurisdiction to resolve the dispute.

Coast moved to dismiss the appeal based on nonappealability, lack of standing, lack of jurisdiction, mootness, and other grounds, and also moved for an award of sanctions against the Serranos for filing a frivolous appeal. We denied the motion to dismiss and notified the parties that we would reserve the issues relating to Coast's request for sanctions.

## CONTENTIONS

The Serranos contend (1) the trial court has the authority to require a certified shorthand reporter acting as a deposition reporter to provide a copy of a deposition transcript to a party in a pending action for a reasonable fee; (2) the expedited service fees improperly imposed on the Serranos part of the cost of transcription, which must be borne by the party noticing the deposition; (3) if the court had no jurisdiction to determine whether the fees were unreasonable, it had no jurisdiction to order the Serranos to pay the fees; and (4) other fees apart from the expedited service fees also are unreasonable.

Coast disputes those contentions and argues that (1) the appealed orders are nonappealable interlocutory orders; (2) the Serranos are not aggrieved parties, so they have no standing to appeal; (3) the Serranos and Coast agreed to binding resolution of this dispute by the judge acting as an arbitrator, so there is no right of appeal; (4) this court can grant no effective relief to the Serranos, so the appeal is moot; and (5) the trial court had neither personal jurisdiction over Coast nor subject matter jurisdiction over the dispute between the Serranos and Coast, so the denial of the Serranos' motion was proper.[4]

---

[4] Coast made several of these contentions in its motion to dismiss the appeal and incorporated the contentions by reference in its respondent's brief. Although our denial of the motion to dismiss indicates our rejection of the contentions as a basis for dismissal, we nonetheless will address in this opinion some of the arguments made in the motion to dismiss.

## DISCUSSION

### 1. *The Orders Are Appealable Collateral Orders*

■ The collateral order doctrine holds that an order that finally determines a matter that is distinct and severable from the main issues in the proceeding and that directs the payment of money or performance of some other act is appealable. (*In re Marriage of Skelley* (1976) 18 Cal.3d 365, 368 [134 Cal.Rptr. 197, 556 P.2d 297].) "This constitutes a necessary exception to the one final judgment rule. Such a determination is substantially the same as a final judgment in an independent proceeding. [Citations.]" (*Ibid.*)

At the hearing on July 20, 2006, the court orally ordered the Serranos to pay the fees charged by Coast for copies of the deposition transcripts. The court stated: "That's the effect of my order. I'm ordering them to pay them." The court reiterated that order on July 25, 2006, when it denied the Serranos' ex parte application to stay the order of July 20 and stated in response to the request by Coast's counsel that the court order payment made by Thursday, July 27, 2006: "I will order it paid by Thursday. . . . Pay it Thursday."

The orders finally determined the issue of the Serranos' liability for payment to Coast for copies of the deposition transcripts.[5] The orders did not decide the parties' rights with respect to the relief demanded in the Serranos' complaint against Stefan Merli Plastering Company, Inc., for damages for personal injuries, and the orders would neither influence nor be influenced by subsequent proceedings in the action with respect to the relief demanded in the complaint. The orders therefore were collateral to the main issues in the proceeding. (*In re Marriage of Skelley, supra,* 18 Cal.3d at pp. 368–369.) The orders also directed the payment of money, and thus satisfy all of the requirements for appealable collateral orders. We conclude that the orders are appealable under the collateral order doctrine.

### 2. *The Serranos As Aggrieved Parties Have Standing to Appeal the Orders*

■ Only a party aggrieved by a judgment or order has standing to appeal the judgment or order. (§ 902 ["Any party aggrieved may appeal in the cases prescribed in this title."].) A party who has an interest recognized by law that is adversely affected by the judgment or order is an aggrieved party. (*County of Alameda v. Carleson* (1971) 5 Cal.3d 730, 737 [97 Cal.Rptr. 385, 488 P.2d 953]; *Cesar V. v. Superior Court* (2001) 91 Cal.App.4th 1023, 1035 [111

---

[5] As already noted, this was an issue that the parties had voluntarily submitted to the court for decision.

Cal.Rptr.2d 243].) The interest must be immediate and substantial, and not nominal or remote. (*County of Alameda, supra,* at p. 737; *In re L. Y. L.* (2002) 101 Cal.App.4th 942, 949 [124 Cal.Rptr.2d 688].)

The court ordered the Serranos to pay the fees charged by Coast for copies of the deposition transcripts, including $2,871.57 in disputed fees for expedited copies. Contrary to Coast's argument, there is no indication in the record that the orders to pay the fees were directed to the Serranos' counsel rather than to the Serranos as the litigants.[6] We conclude that the Serranos' interest is immediate and substantial and that they have standing to appeal as aggrieved parties. We reject Coast's additional argument that the Serranos did not authorize their attorneys to appeal on their behalf. That argument is based on mere supposition and has no support in the record.

### 3. *The Serranos Did Not Agree to Binding Arbitration or Waive the Right of Appeal*

■ Coast cites *Moncharsh v. Heily & Blase* (1992) 3 Cal.4th 1 [10 Cal.Rptr.2d 183, 832 P.2d 899] in support of its argument that the Serranos and Coast agreed to "binding resolution" of their dispute by the trial court "functioning as an arbitrator." *Moncharsh* held that an arbitration award under the contractual arbitration law (§ 1280 et seq.) is final, binding, and ordinarily is not subject to judicial review. (*Moncharsh, supra,* at pp. 9–13, 33.) An arbitration subject to the contractual arbitration law "arises solely out of an arbitration agreement, specifically, a *written* arbitration agreement (. . . § 1281), between the parties thereto [citations]." (*Mercury Ins. Group v. Superior Court* (1998) 19 Cal.4th 332, 344 [79 Cal.Rptr.2d 308, 965 P.2d 1178].) Absent a written arbitration agreement between the Serranos and Coast, we conclude that the trial court was not acting as an arbitrator under the contractual arbitration law. Moreover, there is no indication in the record that the Serranos and Coast agreed in any manner, orally or in writing, to submit their dispute to "arbitration" or waived the right of appeal.

■ Contractual arbitration by a private arbitrator under the contractual arbitration law and judicial arbitration by a judge are mutually exclusive. (§ 1141.30; *Heenan v. Sobati* (2002) 96 Cal.App.4th 995, 1000–1003 [117 Cal.Rptr.2d 532].) Judicial arbitration is governed by the judicial arbitration law (§ 1141.10). Unlike a contractual arbitration award, a judicial arbitration award is not final and binding, but is subject to trial de novo in the trial court. (§ 1141.20; *Mercury Ins. Group v. Superior Court, supra,* 19 Cal.4th at

---

[6] The sole support cited by Coast for its argument that the court ordered the Serranos' attorneys, rather than the Serranos, to pay the fees is a notice of ruling prepared by Coast's counsel. A notice of ruling prepared by counsel is not an order by the court, might not accurately reflect the court's ruling, and is not dispositive in these circumstances.

p. 343.) Coast does not argue, and the record does not disclose, that the parties stipulated to judicial arbitration (§ 1141.12, subd. (a); Cal. Rules of Court, former rule 1602(a)), that the Serranos filed an election to submit to judicial arbitration (§ 1141.12, subd. (b); Cal. Rules of Court, former rule 1602(b)), or that the court submitted the matter to judicial arbitration (§ 1141.11).

We construe the agreement by counsel for the Serranos and counsel for Coast to submit their dispute to the trial court for its decision as an agreement (1) to allow the court to decide in the pending action a matter that was not within the scope of the pleadings and pertained to a third party, Coast, that was not named as a party in the action, and (2) that the court's decision would govern the Serranos' liability to Coast for fees not only for the Audell deposition, but also for other depositions in the action. The trial court's comments regarding "the agreement" (quoted *ante*) are consistent with our understanding of the agreement and do not suggest either that the court understood the agreement to be an arbitration agreement or that the court agreed to serve as an arbitrator.

### 4. *The Appeal Is Not Moot*

Coast contends the appeal is moot because the Serranos settled their action against defendant, and because the trial court had neither personal jurisdiction over Coast nor subject matter jurisdiction over the dispute between the Serranos and Coast and would have no such jurisdiction on remand. Our conclusion that the trial court had both personal jurisdiction and subject matter jurisdiction (discussed in pt. 5, *post*) disposes of the claim of mootness based on lack of jurisdiction. As for the settlement, the settlement and dismissal of the action between the Serranos and defendant expressly did not prejudice the rights of the Serranos as against Coast and did not moot this appeal.

### 5. *The Trial Court Had Jurisdiction with Respect to This Dispute*

#### a. *Personal Jurisdiction*

██ A court acquires personal jurisdiction over a party that makes a general appearance in an action even if no summons is served on that party. (§ 410.50, subd. (a).) Section 1014 lists several acts that constitute an appearance by a defendant (i.e., filing an answer, demurrer, motion to strike, motion to transfer, etc.), but the list is nonexclusive. (*Hamilton v. Asbestos Corp.* (2000) 22 Cal.4th 1127, 1147 [95 Cal.Rptr.2d 701, 998 P.2d 403].) A party may make a general appearance in an action by " 'various acts which, under all of the circumstances, are deemed to confer jurisdiction of the

person. [Citation.] What is determinative is whether defendant takes a part in the particular action which in some manner recognizes the authority of the court to proceed.' [Citation.]" (*Ibid.*)

■ A party whose participation in an action is limited to challenging the court's personal jurisdiction does not make a general appearance. Other forms of participation, however, such as seeking affirmative relief or opposing a motion on the merits, ordinarily constitute a general appearance. (*Dial 800 v. Fesbinder* (2004) 118 Cal.App.4th 32, 52–54 [12 Cal.Rptr.3d 711]; *Alioto Fish Co. v. Alioto* (1994) 27 Cal.App.4th 1669, 1688–1689 [34 Cal.Rptr.2d 244].) Even a nonparty that is not named in the pleadings makes a general appearance and submits to the court's personal jurisdiction by participating in the proceedings in such a manner. (*People v. Ciancio* (2003) 109 Cal.App.4th 175, 192–193 [134 Cal.Rptr.2d 531].)

Coast never challenged the court's personal jurisdiction, but instead agreed that the court would determine the validity and reasonableness of the expedited service fees and opposed on the merits the Serranos' motion for relief from those fees. Coast also requested affirmative relief in the form of an order for payment of the fees charged, and later an order that payment be made by a date certain. We conclude that by participating in the action in this manner, Coast made a general appearance in the action and became subject to the court's personal jurisdiction for the purpose of resolving its dispute with the Serranos over the cost of expedited deposition transcripts.

b. *Subject Matter Jurisdiction*

■ Subject matter jurisdiction refers to the court's power to hear and resolve a particular dispute or cause of action. (*Donaldson v. National Marine, Inc.* (2005) 35 Cal.4th 503, 512 [25 Cal.Rptr.3d 584, 107 P.3d 254].) The California Constitution confers broad subject matter jurisdiction on the superior court. (Cal. Const., art. VI, § 10.) The subject matter jurisdiction of the superior court is limited in certain circumstances, however, such as in areas of exclusive federal jurisdiction (see 2 Witkin, Cal. Procedure (4th ed. 1996) Jurisdiction, §§ 75–81, pp. 612–617), matters within the exclusive jurisdiction of an administrative agency (see *id.*, § 49, pp. 590–591), and where jurisdiction is vested in a reviewing court as a result of the filing of a notice of appeal (see *id.*, § 96, pp. 633–634). None of those circumstances was present here, and Coast has identified no other circumstance that would deprive the court of subject matter jurisdiction over the dispute between the Serranos and Coast. We are aware of no valid reason to find an absence of subject matter jurisdiction, particularly where (1) the dispute involves a right created by a California discovery statute and the court's authority to control the conduct of its ministerial officers (as discussed below in pt. 6) and (2) the

dispute is typical of those commonly adjudicated in California courts. As we now discuss, the authorities cited by Coast do not compel a contrary conclusion.

### c. *The Authorities Cited by Coast Are Inapposite*

Coast cites *Summers v. Superior Court* (1959) 53 Cal.2d 295 [1 Cal.Rptr. 324, 347 P.2d 668] (*Summers*) for the proposition that the trial court had neither personal jurisdiction over Coast nor subject matter jurisdiction over the dispute with the Serranos. *Summers* involved a fee dispute between the plaintiff in an action and a court reporter. After filing a notice of appeal, the plaintiff filed "exceptions" to the court reporter's charges for preparing an original and two copies of the reporter's transcript. The trial court held a hearing on the exceptions, admitted evidence presented by both sides, and denied the exceptions. (*Id.* at pp. 296–297.) *Summers* held that the trial court in the action on appeal had no subject matter jurisdiction to decide the fee dispute between the plaintiff and the court reporter after the transcript had been filed. (*Id.* at pp. 297–298.)

*Summers* stated: "The Williams case [*Williams v. Superior Court* (1939) 14 Cal.2d 656 [96 P.2d 334]] correctly points out that the trial court in the case on appeal has power to determine whether the appellant has complied with all necessary legal requirements to secure a transcript and, if so, to see to it that the reporter complies with the law and prepares and files the transcript. *But the court has no jurisdiction in the case on appeal to pass on disputes between the reporter and the appellant over fees.* As was said in the Williams case, *supra*, at page 665: 'If after the delivery of the transcript a dispute should arise between the . . . [appellant] and the reporter as to the amount the reporter is legally entitled to receive, his recourse would be, as outlined in the *Gjurich* case [*Gjurich v. Fieg* (1911) 160 Cal. 331 [116 P. 745]], an action in the ordinary course of law to collect the same, which necessarily would involve a determination of the question of the validity of the agreement theretofore entered into between the parties.' " (*Summers*, *supra*, 53 Cal.2d at p. 298, italics added.)

Thus, *Summers*, *supra*, 53 Cal.2d 295, held that the trial court had no subject matter jurisdiction over the fee dispute between the appellant and the court reporter; but it was not because all disputes between parties to an action and certified shorthand reporters who are not parties to the action are beyond the court's subject matter jurisdiction, as Coast appears to argue. Rather, *Summers* held only that, although the court retained jurisdiction to ensure the preparation and filing of a transcript for the appeal, the court had no jurisdiction to decide a fee dispute between the appellant and the court reporter after the filing of an appeal and after the transcript had been filed.

*Summers* is not on point because at the time of the hearing on the Serranos' motion for relief from the expedited service fees, no notice of appeal had been filed, so the court was not divested of subject matter jurisdiction by the filing of a notice of appeal. Moreover, unlike the situation in *Summers,* where the transcript had already been delivered at the time the fee dispute arose, the dispute here arose before the transcript was delivered, and Coast refused to deliver the transcript until after the Serranos had agreed to submit the fee dispute to the trial court for resolution.[7]

Coast cites *Pennoyer v. Neff* (1877) 95 U.S. 714 [24 L.Ed. 565] and *Allen v. Superior Court* (1953) 41 Cal.2d 306 [259 P.2d 905] for the proposition that the trial court had no personal jurisdiction over Coast because no summons was served on Coast. Service of a summons is not the only way to establish personal jurisdiction. Rather, for purposes of personal jurisdiction, "A general appearance by a party is equivalent to personal service of summons on such party" (§ 410.50, subd. (a)), as we have explained.

Coast cites *Orange County Water Dist. v. City of Colton* (1964) 226 Cal.App.2d 642 [38 Cal.Rptr. 286] (*City of Colton*) for the proposition that the scope of the trial court's jurisdiction is defined by the pleadings and that a judgment beyond the scope of the pleadings is invalid. After a second amended judgment was entered establishing the parties' prescriptive rights to water usage, the plaintiff in *City of Colton* moved to modify the judgment to adjudicate other water rights relating to nonparties. (*Id.* at pp. 644–646.) The plaintiff relied on a provision in the judgment reserving jurisdiction to adjudicate certain other matters. (*Id.* at p. 646.) *City of Colton* stated: "In making this proviso, the court does not purport to reserve, and indeed it could not reserve unto itself in this action, the right to adjudicate new and after-acquired rights by any of the parties hereto which were nonexistent in that party at the time of pleading and trial of the issues, nor could it adjudicate rights of any nature between these litigants and overlying land owners not parties to the action." (*Id.* at pp. 646–647.)

*City of Colton* stated that the issues that the plaintiff sought to adjudicate in the motion to modify the judgment were beyond the scope of the issues before the court at the time of trial. (*City of Colton, supra,* 226 Cal.App.2d at p. 649.) It stated, "[a] judgment outside the issues is not a mere irregularity; it is extrajudicial and invalid. (*Baar v. Smith* [(1927)] 201 Cal. 87, 101 [255 P.

---

[7] While not necessarily relevant to the jurisdiction issues, it is worth noting that in both *Summers, supra,* 53 Cal.2d 295, and *Williams v. Superior Court, supra,* 14 Cal.2d 656, the appellant and the court reporter had a contractual relationship which necessarily would govern the resolution of any fee dispute. That is not the case here. Thus, absent judicial intervention by the trial court, the appellants in this case would have no remedy other than to forego acquiring the transcripts of their own expert witnesses' depositions. (See fn. 11, *post.*)

827].)" (*Ibid.*) *City of Colton* held that the court had no jurisdiction to grant the requested relief and affirmed the order denying the motion: "We hold that in this action and at the time appellant made this particular motion the trial court was without jurisdiction to grant it and therefore properly made its order denying the motion." (*Id.* at p. 650.) *City of Colton* is not on point because it involved the attempted modification of a judgment on issues that were not within the scope of issues litigated before the entry of judgment, and because there is no indication that the nonparties affected by the requested modification in that case participated in the proceedings so as to establish both personal jurisdiction and a basis to conclude that any variance between the pleadings and the proof was immaterial. (See § 469; *Franz v. Board of Medical Quality Assurance* (1982) 31 Cal.3d 124, 143–144 [181 Cal.Rptr. 732, 642 P.2d 792]; *Baar v. Smith, supra,* 201 Cal. at p. 98.)

6. *The Trial Court Has the Authority to Require a Deposition Reporter to Provide a Copy of a Transcript to a Nonnoticing Party for a Reasonable Fee*

We now turn to the question whether a trial court has the authority to require a deposition reporter to provide a copy of a transcript to a nonnoticing party in a pending action for a reasonable fee and, if a dispute exists as to the amount of such "reasonable" fee, to resolve it in the proceeding in which the dispute arose.

a. *Rules of Statutory Construction*

██ Statutory construction is a question of law that we review de novo. (*Barner v. Leeds* (2000) 24 Cal.4th 676, 683 [102 Cal.Rptr.2d 97, 13 P.3d 704].) Our task in construing a statute is to ascertain the legislative intent so as to effectuate the purpose of law. (*Hassan v. Mercy American River Hospital* (2003) 31 Cal.4th 709, 715 [3 Cal.Rptr.3d 623, 74 P.3d 726].) The statutory language ordinarily is the most reliable indicator of legislative intent. (*Ibid.*) We give the words of the statute their ordinary and usual meaning and construe them in the context of the statute as a whole and the entire scheme of law of which it is a part. (*State Farm Mutual Automobile Ins. Co. v. Garamendi* (2004) 32 Cal.4th 1029, 1043 [12 Cal.Rptr.3d 343, 88 P.3d 71].) If the language is clear and a literal construction would not result in absurd consequences that the Legislature did not intend, the plain meaning governs. (*Coalition of Concerned Communities, Inc. v. City of Los Angeles* (2004) 34 Cal.4th 733, 737 [21 Cal.Rptr.3d 676, 101 P.3d 563].) If the language is ambiguous, we may consider a variety of extrinsic aids, including the purpose of the statute, legislative history, and public policy. (*Ibid.*)

b. *Statutory Framework*

 A deposition must be conducted under the supervision of a deposition officer who is authorized to administer an oath. (§ 2025.320.) The deposition testimony must be recorded stenographically, unless the parties agree or the court orders otherwise. (§ 2025.330, subd. (d).) If the testimony is recorded stenographically, it must be recorded by a certified shorthand reporter. (*Ibid.*; Bus. & Prof. Code, § 8020.) In practice, the deposition officer and certified shorthand reporter ordinarily are, but need not necessarily be, the same person.[8] (See § 2093, subd. (b)(1); Weil et al., Cal. Practice Guide: Civil Procedure Before Trial (The Rutter Group 2007) ¶ 8:652, p. 8E-87.) That common practice was followed here.

 Section 2025.510 states that the recorded testimony must be transcribed, unless the parties agree otherwise. (*Id.*, subd. (a).) Section 2025.510 states further, "[t]he party noticing the deposition shall bear the cost of that transcription, unless the court, on motion and for good cause shown, orders that the cost be borne or shared by another party." (*Id.*, subd. (b).) Any other party or the deponent may obtain a copy of the transcript at the expense of that party or deponent. (*Id.*, subd. (c).)[9] If any party requests an original or a copy of the deposition transcript and the transcript will be available to that party before the original or a copy would be available to any other party, the deposition reporter must notify the other parties attending the deposition of the request and, if requested, must make a copy of the transcript available to all parties at the same time. (*Id.*, subd. (d).)

The deposition reporter must notify all parties attending the deposition and the deponent when the original transcript of each session of the deposition is available for reading, correcting, and signing by the deponent, unless the parties agree that the reading, correcting, and signing will be waived or will take place at another time. (§ 2025.520, subd. (a).) The deponent then has 30 days to change the form or substance of an answer, unless the parties attending the deposition and the deponent agree to another time period. (*Id.*, subd. (b).) The deponent may either approve the transcript by signing it, refuse to approve the transcript by not signing it, or indicate his or her approval or disapproval in a letter to the deposition reporter. (*Id.*, subds. (b), (c).) The court may shorten the 30-day period for good cause. (*Id.*, subd. (d).)

Section 2025.320, subdivision (b) states: "Services and products offered or provided by the deposition officer or the entity providing the services of the

---

[8] References in this opinion to the deposition reporter assume that the reporter is acting as a deposition officer.

[9] Section 2025.510, subdivision (c) states: "Notwithstanding subdivision (b) of Section 2025.320, any other party or the deponent, at the expense of that party or deponent, may obtain a copy of the transcript."

deposition officer to any party or to any party's attorney or third party who is financing all or part of the action shall be offered to all parties or their attorneys attending the deposition. No service or product may be offered or provided by the deposition officer or by the entity providing the services of the deposition officer to any party or any party's attorney or third party who is financing all or part of the action unless the service or product is offered or provided to all parties or their attorneys attending the deposition. All services and products offered or provided shall be made available at the same time to all parties or their attorneys."

Section 2025.570 states: "(a) Notwithstanding subdivision (b) of Section 2025.320, unless the court issues an order to the contrary, *a copy of the transcript of the deposition testimony* made by, or at the direction of, any party, or an audio or video recording of the deposition testimony, if still in the possession of the deposition officer, *shall be made available by the deposition officer to any person requesting a copy, on payment of a reasonable charge set by the deposition officer.*

"(b) If a copy is requested from the deposition officer, the deposition officer shall mail a notice to all parties attending the deposition and to the deponent at the deponent's last known address advising them of all of the following:

"(1) The copy is being sought.

"(2) The name of the person requesting the copy.

"(3) The right to seek a protective order under Section 2025.420.

"(c) If a protective order is not served on the deposition officer within 30 days of the mailing of the notice, the deposition officer shall make the copy available to the person requesting the copy.

"(d) This section shall apply only to recorded testimony taken at depositions occurring on or after January 1, 1998."[10] (Italics added.)

 Section 128, subdivision (a)(5) states that every court shall have the power "[t]o control in furtherance of justice, the conduct of its ministerial

---

[10] Section 2025.420, subdivision (a) states that any party, deponent, or other affected person may promptly move for a protective order and that the motion can be made before, during, or after a deposition and must be accompanied by a meet and confer declaration under section 2016.040. Section 2025.420, subdivision (b) states that the court for good cause "may make any order that justice requires to protect any party, deponent, or other natural person or organization from unwarranted annoyance, embarrassment, or oppression, or undue burden and expense." Subdivision (b) then provides a nonexclusive list of restrictions that may be included in a protective order, including measures to prevent the disclosure of trade secrets and other confidential information.

officers, and of all other persons in any manner connected with a judicial proceeding before it, in every matter pertaining thereto." Section 128, subdivision (a) confirms some of the court's inherent powers, derived from the judiciary's constitutional role as a separate branch of government (Cal. Const., art. VI, § 1). (*Walker v. Superior Court* (1991) 53 Cal.3d 257, 266–267 [279 Cal.Rptr. 576, 807 P.2d 418].) "We have often recognized the 'inherent powers of the court . . . to insure the orderly administration of justice.' [Citations.]" (*Id.* at p. 266.) ■ A deposition officer is a ministerial officer of the court within the meaning of section 128, subdivision (a)(5). (*Burns v. Superior Court* (1903) 140 Cal. 1, 9 [73 P. 597].) *Burns* explained that a deposition officer performs the role previously performed by a court-appointed commissioner, or examiner, in courts of equity. (*Id.* at pp. 6–9.) ■ Section 128, subdivision (a)(5) confirms the court's inherent authority in a pending action not only to compel ministerial officers to perform their express statutory duties, but also to control the conduct of ministerial officers in pending actions in order to protect the administration of justice.

c. *The Court in a Pending Action Has the Authority to Require a Deposition Reporter to Provide a Copy of a Transcript to a Nonnoticing Party for a Reasonable Fee*

■ Section 2025.510, subdivision (c) (quoted in fn. 9, *ante*) states that any party other than the party noticing the deposition, or the deponent, "may obtain a copy of the transcript" at that party's or deponent's own "expense." The statute thus ensures that a nonnoticing party can obtain a copy of a transcript of a deposition taken in the pending action, provided that such party pays the "expense" (*ibid.*) of the copy. If the deposition reporter refuses to provide a copy of a transcript to a nonnoticing party in a pending action, the trial court obviously should be able to enforce this statutory right by ordering the deposition reporter to provide a copy of the transcript to the party on condition of the party's payment of the "expense" of the copy. (*Ibid.*; see § 128, subd. (a)(5).)

■ Coast argues that while a trial court may order a deposition reporter to deliver a copy of a deposition transcript to a nonnoticing party and that the nonnoticing party "must pay for it," the court has no authority to "reduce" or "regulate the *amount* of" the fee charged by the reporter. Thus, Coast argues that a court ordering a deposition reporter to provide a copy of a transcript to a party pursuant to section 2025.510, subdivision (c) must order that party to pay the fee charged by the deposition reporter regardless of the amount of the fee. We firmly reject that argument. As we now explain, if a deposition reporter either refuses to provide a copy of a deposition transcript to a nonnoticing party in a pending action, for whatever reason, or imposes unacceptable conditions upon such delivery, and the court must intervene, we

conclude that the "expense" that the court may require the nonnoticing party to pay for the transcript must be *reasonable*.[11]

The party noticing the deposition can select the deposition reporter based on cost and other considerations, and can bargain for lower rates. The nonnoticing party, on the other hand, has no control over the selection of the deposition reporter and is in no position to bargain for lower rates. This arrangement provides no meaningful protection to the nonnoticing party against excessive rates. Indeed, price competition may encourage a deposition officer to charge the noticing party less than the actual cost of transcription and other services provided to the noticing party and to shift some of that cost onto the nonnoticing parties. (See, e.g., *Saunders v. Superior Court* (1994) 27 Cal.App.4th 832, 839–840 [33 Cal.Rptr.2d 438].)

Depositions play an important role in litigation and trial preparation, and deposition testimony may be offered as evidence in pretrial proceedings and, in some circumstances, at trial. In light of the importance of deposition testimony in a pending action and the nonnoticing party's lack of bargaining power, a trial court must be cautious not to lend assistance to overreaching by the deposition reporter. For a deposition reporter to refuse to provide a copy of a transcript to a nonnoticing party in a pending action unless the party agrees to pay an unreasonable fee would be grossly unfair. Moreover, for a deposition reporter, as an officer of the court, to engage in such conduct would be an abuse of the reporter's authority. For a trial court to condone such conduct by conditioning the party's right to receive a copy of a transcript on payment of an unreasonable fee would undermine rather than promote the administration of justice and could very well result in a denial of due process to the nonnoticing party victimized by the reporter's conduct. It therefore follows that the only monetary condition that the court may properly place upon the nonnoticing party's right to receive a copy of the deposition transcript would be payment of a *reasonable* fee.

■ This conclusion finds support in the fact that section 2025.570, subdivision (a) expressly requires that the fee charged by a deposition officer to "any person requesting a copy" of the transcript be "reasonable." Although the legislative history suggests that section 2025.570, subdivision (a) was intended to apply only to *nonparties* (see Sen. Com. on Judiciary, Analysis of Sen. Bill No. 544 (1997–1998 Reg. Sess.) as amended May 7, 1997, pp. 1–2; Assem. Com. on Judiciary, Analysis of Sen. Bill No. 544 (1997–1998 Reg. Sess.) as amended July 14, 1997, p. 2), it would be anomalous indeed for the Legislature to require a deposition officer to provide a copy of a deposition

---

[11] The conclusion we reach in this matter assumes that there is no controlling contractual relationship between the reporter and the nonnoticing party relating to the cost of a copy of a deposition.

transcript to a nonparty for a reasonable fee while denying the same protection for a litigating party. Accordingly, we construe section 2025.510, subdivision (c) as a grant of authority to the trial court to order a deposition officer to provide a copy of a transcript to a nonnoticing party in a pending action upon payment of a reasonable fee.

*Urban Pacific, supra,* 59 Cal.App.4th 688, the case cited by the trial court, is not on point, and its dictum is unpersuasive. *Urban Pacific* held that a deponent's attorney could not use a business records deposition subpoena to compel a certified shorthand reporter to make a deposition transcript in a pending action available for copying, in lieu of paying the reporter what the court characterized as an "unconscionable" fee for a copy. (*Id.* at pp. 692–694.) *Urban Pacific* reasoned that the transcript was not a "business record[]" within the meaning of former section 2020, subdivision (d). (59 Cal.App.4th at pp. 692–693.) The court stated further, "Although the fees charged by court-retained reporters are fixed by statute (Gov. Code, §§ 69947, 69948, 69950), there is no statute regulating the fees charged by private reporting firms, and deposition reporters are free to charge all the market will bear. [Fn. omitted.]" (*Id.* at pp. 691–692.)[12]

*Urban Pacific, supra,* 59 Cal.App.4th 688, was decided before the effective date of former section 2025.5, which later became section 2025.570.[13] (Cal. Law Revision Com. com., 21–22 West's Ann. Code Civ. Proc. (2007 supp.) foll. § 2025.570, p. 284.) *Urban Pacific* noted that former section 2025.5 would soon become effective, quoted the statute, and stated in dictum: "Unless Miller & Company [the certified shorthand reporter] concedes that its charges are *not* 'reasonable,' we do not see how this new statute would affect the problem faced by Ihnen [the deponent seeking a copy], particularly since the new statute appears to be for the benefit of nonparties, not parties.

---

[12] The *Urban Pacific* court's reference to the "market" is revealing. A marketplace implies consenting sellers and buyers; that is, a contractual relationship between a reporter and a party seeking to purchase a copy of a deposition. As we have emphasized, such a circumstance has little relevance to the factual context presented by this case where a party with no contractual relationship with the reporter, absent timely judicial intervention, could be placed at the mercy of the reporter's arbitrary pricing policy. A deposition reporter has no economic incentive to limit charges to a nonnoticing party to "reasonable" charges. Indeed, the reporter's economic incentive would more likely point to the use of the resources of a nonnoticing party to make up for any discounts, or other business acquisition expenses, that may have benefited the noticing party. Such conduct by a reporter would be manifestly unfair. (See, e.g., *Saunders v. Superior Court, supra,* 27 Cal.App.4th at pp. 839–840.) A trial court's failure to intervene to prevent such abuse of a nonnoticing party would amount to official toleration of such conduct. To the extent that *Urban Pacific* suggests that such a result is required by judicial impotency in such circumstances, we decline to follow it.

[13] Former section 2025.5 was enacted in 1997 (Stats. 1997, ch. 395, § 2) and became effective on January 1, 1998 (Gov. Code, § 9600, subd. (a)).

(Compare [former] § 2025, subd. (p).)"[14] (*Urban Pacific, supra,* at p. 692, fn. 7.) We find the suggestion in *Urban Pacific* that the trial court has no authority to limit to a reasonable amount the amount that a party is required to pay to obtain a copy of a transcript in a pending action unpersuasive for the reasons we have stated.

██ The amount that the court requires a party to pay to obtain a copy of a transcript in a pending action pursuant to section 2025.510, subdivision (c) must be a reasonable amount for that service, regardless of any other services that the deposition reporter may have provided for which the party requesting a copy is not responsible. The cost of transcription must be borne by the party noticing the deposition, unless the court on motion and for good cause orders otherwise (§ 2025.510, subd. (b)), so a reasonable fee for a copy of the transcript would not include any amount that compensates the deposition reporter for the cost to expedite the transcription. This does not preclude a deposition reporter from charging a reasonable fee for expediting the making, certification, and delivery of a copy. Although the reporter ordinarily sets the fee in the first instance, the reasonableness of the "expense" (*id.,* subd. (c)) that a court may require a party to pay to obtain a copy of the transcript in a pending action is a question within the sound discretion of the trial court. The concerns expressed by Coast and the amici curiae concerning intrusive, ad hoc price regulation are unfounded. ██ Our holding is limited to circumstances where (1) there is no relevant contractual relationship between the deposition reporter and the nonnoticing party relating to the cost of a copy of the deposition transcript and (2) court intervention is required to ensure that the deposition reporter provide a copy of a deposition transcript to a nonnoticing party in a pending action where the reporter has either refused to provide such a copy or is willing to do so only on the condition that the nonnoticing party pay what it believes to be an unreasonable fee.[15]

### d. *In the Event of a Dispute, the Trial Court May Determine the Amount of the Reasonable Fee*

██ As we have explained, a trial court has the authority to order a deposition reporter to provide a copy of a transcript to a nonnoticing party in a pending action for a reasonable fee. If there is a dispute as to the amount of such reasonable fee, the court in the pending action is in the best position to

---

[14] Former section 2025, subdivision (p) stated that any party other than the party noticing the deposition, or the deponent, may obtain a copy of the transcript at that party's or deponent's expense, as section 2025.310, subdivision (c) now states.

[15] The Serranos also challenge fees charged by Coast specifically for copies of depositions of expert witnesses and the application of a per page fee not only to pages of deposition testimony but also to index pages. The reasonableness of those fees and any other fees imposed by the reporter for a copy of a deposition transcript is a question for the trial court to resolve on remand.

resolve that dispute in a timely fashion. To defer the determination to a later, separate proceeding would be impractical and inefficient and would undermine the trial court's necessary authority under section 128, subdivision (a)(5), as well as imperil the due process rights of the nonnoticing party. The court should provide an opportunity for the nonnoticing party and the deposition reporter to submit evidence as to the amount of a reasonable fee, make a determination as to the appropriate amount, and order payment on terms that the court deems appropriate.

We also note that the result we reach is entirely consistent with the relevant cost statutes. Section 1033.5, subdivision (a)(3) provides for recovery of costs by a prevailing party for taking or attending depositions. Such costs must be reasonable. (§ 1033.5, subd. (c)(3).) A court has the obligation to ensure that only costs that are necessary and reasonable in amount are allowed to a prevailing party. (*Thon v. Thompson* (1994) 29 Cal.App.4th 1546, 1548–1549 [35 Cal.Rptr.2d 346].) Trial courts routinely resolve disputes over cost claims in a manner no different from the procedure we require in this matter.

### 7. *The Trial Court Failed to Exercise Its Discretion*

Coast initially refused to provide a copy of the Audell deposition transcript to the Serranos without payment in full of the fees charged. Coast provided a copy to the Serranos only after they applied ex parte for relief and after the Serranos and Coast agreed to be bound by the court's determination as to "the validity and reasonableness" of the expedited service fees for the Audell deposition transcript and all subsequent deposition transcripts in the case. Although Coast provided the Serranos with copies of the transcripts before the hearing, it did so with the express understanding that the Serranos and Coast would be bound by the court's ruling. This agreed arrangement facilitated the delivery of the copies to the Serranos and did not deprive the court of its authority to determine pursuant to section 2025.510, subdivision (c) whether the amounts that the Serranos were required to pay to obtain the copies were reasonable.

The court denied the Serranos' motion for relief from the expedited service fees based on its conclusion that it had no authority to limit the amounts charged by Coast, and ordered the Serranos to pay the full amounts charged by Coast. Since we have concluded that the court had the authority to determine whether the amounts that the Serranos were required to pay for copies of the deposition transcripts were reasonable, the court's failure to exercise its discretion in this regard was error. (*Dickson, Carlson & Campillo v. Pole* (2000) 83 Cal.App.4th 436, 449 [99 Cal.Rptr.2d 678].) The court erred by ordering the Serranos to pay the full expedited service fees

charged by Coast without determining whether those amounts were reasonable. The appropriate remedy is for the trial court on remand to determine whether the expedited service fees charged by Coast for copies of deposition transcripts were reasonable and order Coast to refund to the Serranos any amounts paid by the Serranos in excess of the reasonable charges.

## DISPOSITION

The orders of July 20 and 25, 2006, are reversed and remanded with directions to the trial court to (1) determine whether the expedited service fees charged by Coast for copies of deposition transcripts were reasonable, and (2) if any of those amounts were unreasonable, order Coast to refund to the Serranos the amounts paid by the Serranos in excess of the reasonable charges. Coast's motion for sanctions based on a claim of frivolous appeal is necessarily denied. The Serranos are entitled to recover their costs on appeal.

Klein, P. J., and Aldrich, J., concurred.

A petition for a rehearing was denied May 21, 2008, and respondent's petition for review by the Supreme Court was denied August 20, 2008, S164378.