691[No. B114725. Second Dist., Div. One. Nov. 26, 1997.]

URBAN PACIFIC EQUITIES CORPORATION et al., Petitioners, v. THE SUPERIOR COURT OF LOS ANGELES COUNTY, Respondent; STEINER & LIBO et al., Real Parties in Interest.

## COUNSEL

Prince, Heuer & O'Connell, Henry T. Heuer, Daniel J. O'Connell and Christopher L. Wong for Petitioners.

No appearance for Respondent.

Robie & Matthai, Edith R. Matthai, Pamela E. Dunn, Kim W. Sellars, Bolson, Nishimura & Saunders, Nishimura & Saunders and Alan B. Nishimura for Real Parties in Interest.

Byrd & Associates and Celeste M. Byrd as Amice Curiae on behalf of Real Parties in Interest.

## OPINION

**VOGEL (Miriam A.), J.**—To avoid a court reporter's $6,500 fee for a photocopy of a deposition transcript that any lawyer could produce in-house for about $150, a party served the reporter with a business records subpoena for the transcript. The reporter and the party who had noticed the deposition moved to quash the subpoena, their motions were granted, and a petition for a writ of mandate was filed with us. We were intrigued and issued an order to show cause but conclude, albeit reluctantly, that a business records subpoena cannot be used in this manner.

## FACTS

Urban Pacific Equities Corporation and Theodore P. Ihnen sued Steiner & Libo for legal malpractice.[1] In the course of discovery, Steiner & Libo noticed Ihnen's deposition and requested that he produce at his deposition 109 categories of documents. Over a six-week period, Ihnen was deposed at fifteen sessions, all before a court reporter (Miller & Company Reporters) hired by Steiner & Libo. When asked at the conclusion of the deposition to stipulate that the original transcript could be delivered to Ihnen's attorney and the court reporter relieved of her duties, Steiner & Libo's attorney refused.[2] The court reporter offered to make a copy for Ihnen at a cost of $2.30 per page, for a total exceeding $6,500. Ihnen refused, contending the cost was outrageous. Steiner & Libo, as the party noticing Ihnen's deposition, was billed $17,780.05 for "expedited" transcripts, for which it received the original and one copy, as is "customary" in the industry.

Ihnen's lawyer then served a "business records deposition subpoena" on Miller & Company's custodian of records, directing the custodian to make available for copying a transcript of and the exhibits from Ihnen's deposition. (Code Civ. Proc., § 2020, subd. (d).)[3] The subpoena was accompanied by a written authorization for the release of Ihnen's "personal records" in response to the subpoena.

Miller & Company moved to quash the subpoena, contending the specified documents were "available to [Ihnen's] counsel at an estimated cost of

---

[1] Three individual lawyers named as defendants (Leonard Steiner, Neil S. Steiner and Lisa Winfield Liberatore) are included in our references to Steiner & Libo.

[2] When the parties stipulate to the arrangement rejected by Steiner & Libo, the deponent reviews the original in the comfort of his own office, makes the appropriate corrections, and notifies the other parties. While he has the original, he can make his own copy and thus avoid payment of the court reporter's copying fees. In multiple party cases, the attorneys frequently pool their resources, using the original or purchasing one copy so they can make sufficient photocopies for everyone and divide the expense among themselves. The propriety of this practice is not at issue in this case and we do not address it, but the practice cannot be ignored—because the only reason Ihnen resorted to a business records subpoena was because Steiner & Libo decided to play hardball—by subjecting Ihnen to the inconvenience of reviewing the original transcript at the reporter's office and to the expense of purchasing a copy of the transcript from the reporter. (Code Civ. Proc., § 2025, subds. (q), (s); Weil & Brown, Cal Practice Guide: Civil Procedure Before Trial (The Rutter Group 1997) ¶ 8:754, pp. 8E-83 - 8E-84.) If Steiner & Libo had stipulated that Ihnen's counsel could retain custody of the original, Steiner & Libo would still have its own copy, which it received because it noticed and paid for the deposition. According to Steiner & Libo, it refused the stipulation because Ihnen's "deposition was prolonged unnecessarily and finally adjourned because Ihnen testified that he did not know in response to 1,252 questions, he did not recall in response to 1,665 questions and he evaded answering a substantial number of other deposition questions."

[3] Unless otherwise stated, all section references are to the Code of Civil Procedure.

$6,674.05, which is the reasonable cost for transcripts and services rendered in production of fifteen volumes of [Ihnen's] deposition," and complaining that the subpoena constituted a misuse of a discovery tool because it sought to obtain documents "otherwise available through alternate means." As set forth in supporting declarations and exhibits showing the breakdown of the $6,674.05, Miller & Company's charges are *$2.30 per copy for each transcript page but only $0.35 per copy for each page of letter-size exhibits.*[4] Miller & Company asked for sanctions ($1,300). Steiner & Libo also filed a motion to quash the subpoena served on Miller & Company, contending the subpoena was an "ill-conceived attempt [by Ihnen] to avoid paying the court reporter for copies of [his] deposition transcripts . . . ."[5] Steiner & Libo also asked for sanctions ($1,389).

Ihnen opposed both motions to quash the subpoena,[6] explaining that he had "simply taken a more cost-effective approach to obtaining the same discoverable information available through considerably more expensive channels. [Miller & Company] is demanding the exorbitant rate of $2.30 per page, impermissibly forcing [Ihnen] to bear a portion of the cost of transcribing the deposition of Ihnen. . . . That the subpoena method is less lucrative for court reporters is not grounds to quash a business records subpoena." Supporting declarations establish that the market price for photocopies is between $0.02 to $0.04 per page, that Ihnen is not attempting to obtain "free transcripts" and is perfectly willing to pay the reasonable costs of photocopying existing documents, using his own photocopying service at his own expense. At $0.04 per page, the 3,816 pages could be copied at a cost of $152.64. Ihnen's figures are uncontroverted.

The trial court granted the motions to quash the subpoena, finding "there are other available means to get transcripts other than by subpoena," but denied the motions for sanctions. Ihnen then filed a petition for a writ of mandate, asking us to direct the trial court to vacate its order quashing the subpoena. We issued an order to show cause and set the matter for hearing.

### DISCUSSION

Although the fees charged by court-retained reporters are fixed by statute (Gov. Code, §§ 69947, 69948, 69950), there is no statute regulating the fees

[4]Miller & Company's charges included $225 for "shipping and handling" to get the copies from Santa Monica to Century City.

[5]In a separate argument, Steiner & Libo claimed that the deposition transcripts are "personal records" held for safekeeping on behalf of Steiner & Libo, the "consumer," and that Ihnen was required to notify Steiner & Libo of its "privacy rights." Since the deponent was Ihnen, this argument doesn't pass the straight-face test and, not surprisingly, has not been pursued in Steiner & Libo's opposition to this writ petition.

[6]The opposition was filed on behalf of both plaintiffs, Ihnen and Urban Pacific. For simplicity's sake, we refer only to Ihnen.

charged by private reporting firms, and deposition reporters are free to charge all the market will bear.[7] However offended we may be by Miller & Company's obviously excessive charges, the only real issue in this case is whether Ihnen can obtain a copy by means of a business records subpoena. Since the transcript is not a "business record" within the meaning of section 2020, subdivision (d), our answer is that he can't.

## A.

The "business records subpoena," an innovation of the Civil Discovery Act of 1986 (§ 2016 et seq.), commands the production of business records for copying without attendance at a deposition, thus allowing parties to obtain "business records" held by nonparties by simply serving a business records subpoena. (§ 2020, subd. (d).)[8] The statute tells us how and when the subpoena must be served, when a notice to consumers must be given, who may copy the business records, how to determine admissibility of the records (subdivision (d)(6) of section 2020 refers to section 1562 of the Evidence Code) and other equally fascinating details—but it does not tell us what is a

---

[7]Effective January 1, 1998, a new section 2025.5 is added to provide as follows:

"(a) Unless the court issues an order to the contrary, a copy of the transcript, videotape, or other recording of testimony at the deposition, if still in the possession of the deposition officer, shall be made available by the deposition officer to any person requesting a copy thereof upon payment of a reasonable charge set by the deposition officer.

"(b) If a copy is requested from the deposition officer, the deposition officer shall mail a notice to all parties attending the deposition and to the deponent at his or her last known address advising them that (1) the copy is being sought, (2) the name of the person requesting the copy, and (3) the right to seek a protective order pursuant to subdivision (i) of Section 2025. If a protective order is not served on the deposition officer within 30 days of the mailing of the notice, the deposition officer shall make the copy available to the person requesting the copy.

"(c) This section shall apply only to recorded testimony taken at depositions occurring on or after January 1, 1998." (Stats. 1997, ch. 395, § 2, italics added.)

Unless Miller & Company concedes that its charges are *not* "reasonable," we do not see how this new statute would affect the problem faced by Ihnen, particularly since the new statute appears to be for the benefit of nonparties, not parties. (Compare § 2025, subd. (p).)

[8]Subdivision (d)(1) of section 2020 gives the form of a subpoena for the production of business records: "A deposition subpoena that commands only the production of business records for copying shall designate the business records to be produced either by specifically describing each individual item or by reasonably particularizing each category of item. This deposition subpoena need not be accompanied by an affidavit or declaration showing good cause for the production of the business records designated in it. It shall be directed to the custodian of those records or another person qualified to certify the records. It shall command compliance in accordance with paragraph [d](4) on a date that is no earlier than 20 days after the issuance, or 15 days after the service, of the deposition subpoena, whichever date is later."

Subdivision (d)(2) of section 2020 provides that "[i]f, under Section 1985.3, the one to whom the deposition subpoena is directed is a witness, and the business records described in the deposition subpoena are personal records pertaining to a consumer, the service of the deposition subpoena shall be accompanied either by a copy of the proof of service of the notice to the consumer described in subdivision (e) of Section 1985.3, or by the consumer's

"business record" and what is not. Subdivisions (a) and (b) of section 1560 of the Evidence Code (covering the production of business records vis-à-vis admissibility as opposed to discoverability) tell us only that a "business" "includes every kind of business described in [Evidence Code] Section 1270" (which says "a business" is "every kind of business, governmental activity, profession, occupation, calling, or operation of institutions, whether carried on for profit or not"), that "record" "includes every kind of record maintained by such a business," and that a business records subpoena may be used to obtain "all or any part of the records of the business" upon which the subpoena is served.

█  This appears to be an issue of first impression, perhaps because it falls within that category of things that "everybody knows" (as in, "everybody knows you get stuck paying the reporter's outrageous fees unless the other parties stipulate to relieve the reporter of his duties"). Forced to rely on our common sense, this is the way we see it: The transcript of Ihnen's deposition is the *product* of Miller & Company's business, not a *record* of its business, and we do not think "business records" includes the *product* of a business entity. Rather, as used in section 2020, subdivision (d), we think "business records" means an item, collection, or grouping of information *about* a business entity. (Compare Civ. Code, § 1799, subd. (e); see also Black's Law Dict. (6th ed. 1990) p. 199, col. 1 [defining "business records" as "[j]ournals, books of account and other records"].)

In a case in which one of the parties wanted to examine a Ford Explorer, he could not obtain one by serving a business records subpoena on Ford Motor Company, notwithstanding that (leaving to one side all other objections) he could use a business records subpoena to obtain Ford's actual business records (that is, unprivileged information about how it makes its Explorers, the cost thereof and so on)—because the Explorer is Ford's *product*, not part of its business records. Just as Ford produces vehicles, Miller & Company produces deposition transcripts. Since substance must

---

written authorization to release personal records described in paragraph (2) of subdivision (c) of Section 1985.3."

Subdivision (d)(3) of section 2020 covers the persons who may act as officers "for a deposition seeking discovery only of business records for copying . . . ." Subdivision (d)(4) of section 2020 covers the manner in which the business records are to be made available in response to a business records subpoena. Subdivision (d)(5) of section 2020 covers copies for other parties. Subdivision (d)(6) of section 2020 provides that "[t]he provisions of Section 1562 of the Evidence Code concerning the admissibility of the affidavit of the custodian or other qualified person apply to a deposition subpoena served under this subdivision." Subdivision (e) of section 2020 covers a deposition subpoena that commands not only the production of business records but also the attendance and the testimony of the custodian of records, and does not apply here.

control over form, the fact that depositions look like business records is irrelevant.[9]

## B.

We refuse Miller & Company's invitation to read subdivision (p) of section 2025 to compel everyone who wants a copy of a deposition transcript to purchase it from the court reporter, and hold only that a business records subpoena cannot be used as Ihnen tried to use it in this case.[10] We express no views about the propriety of any other procedure employed to avoid the unconscionable costs charged in this case. We note, however, that the fees are, in fact, unconscionable. Miller & Company itself charges only $0.35 per page for copying exhibits, yet charges $2.30 per page for the transcript. Since the record shows that Ihnen could have the entire package copied for about $150, it follows that $6,674 is unconscionable by any definition. To justify its fee, Miller & Company says its reporters are "paid for their services, the quality of which reflects their training, skill, expertise and use of modern technology." While that may be true as to the fee paid by Steiner & Libo as the party who noticed the deposition and is responsible for the cost of the original, it has nothing to do with Ihnen's effort to purchase *an uncertified photocopy*—which is all he wants.[11]

[9]The cited provisions of the Evidence Code (§ 1560 et seq.) address the admissibility of business records, not discoverability, and are thus not dispositive of the issue before us. We mention them because they pertain to the same general subject matter and because they tend to show a legislative assumption that "business records" are things such as journals, account books, reports and the like, not the actual product or service the business sells or provides, for profit or otherwise.

[10]As relevant, subdivision (p) of section 2025 provides that, "[u]nless the parties agree otherwise, the testimony at any deposition recorded by stenographic means shall be transcribed. *The party noticing the deposition shall bear the cost of that transcription, unless the court, on motion and for good cause shown, orders that the cost be borne or shared by another party. Any other party, at that party's expense, may obtain a copy of the transcript.* Stenographic notes of depositions shall be retained by the reporter for a period of not less than eight years from the date of the deposition." (Emphasis added.) We read this to mean that the party noticing the deposition does not have to pay for copies for the other parties; if other parties want copies, the reporter must make copies available to the other parties, who must pay for their own copies. We also note that, effective January 1, 1998, subdivision (p) has been amended to provide that "[i]f the deposition officer receives a request from a party for an original or a copy of the deposition transcript, or any portion thereof, and the document will be available to that party prior to the time the original or copy would be available to any other party, the deposition officer shall immediately notify all other parties attending the deposition of the request, and shall, upon request by any party other than the party making the original request, make that copy of the full or partial deposition transcript available to all parties at the same time." (Stats. 1997, ch. 395, § 1.) This addition does not affect our interpretation of the statute.

[11]It is for this reason that we reject out of hand the arguments made by Steiner & Libo, all of which assume that Ihnen wants a certified copy to use at trial. There is nothing in the

In the absence of legislative recognition of the need for regulation of deposition reporters (whose costs are, directly or indirectly, passed on to the consuming public), no one will be surprised when the courts are presented with variations on the theme of this case.

## DISPOSITION

The petition for a writ of mandate is denied. The parties are to pay their own costs of these writ proceedings.

Spencer, P. J., and Masterson, J., concurred.

---

record to support that assumption, and it is clear that Ihnen only wants a working photocopy to review and to use for trial preparation. There appears to be no reason why Ihnen needs a certified copy, particularly since Steiner & Libo's attorneys will have the original transcript (§ 2025, subd. (s)) and will produce it at trial if it is needed. Whatever justification there may be for charging more for a certified copy, it has nothing to do with this case. (See Evid. Code, § 1563, subd. (b)(1) [defining "reasonable costs" incurred in response to business records subpoena as $0.10 per page for photocopying standard-size documents].)