184 Cal.App.4th 178 (2010)
PORFIRIO SERRANO et al., Plaintiffs and Appellants,
v.
STEFAN MERLI PLASTERING COMPANY, INC., Defendant;
COAST COURT REPORTERS, INC., Objector and Respondent.
No. B215837.
Court of Appeals of California, Second District, Division Three.
April 28, 2010.
*181 Law Offices of David B. Bloom, Edward Idell, Stephen Monroe and James Adler for Plaintiffs and Appellants.
John L. Dodd & Associates, John L. Dodd; Chambers, Noronha & Kubota and Peter A. Noronha for Objector and Respondent.

OPINION
ALDRICH, J.

INTRODUCTION
At issue in Serrano v. Stefan Merli Plastering Co., Inc. (2008) 162 Cal.App.4th 1014 [76 Cal.Rptr.3d 559] (Serrano I) was a dispute about the reasonableness of fees a deposition reporter sought to charge a nonnoticing party for expedited copies. We held in Serrano I that the court in a pending action has the authority to (1) require a deposition reporter to provide a copy *182 of a transcript to a nonnoticing party for a reasonable fee (id. at p. 1035), and (2) determine the amount of the reasonable fee in the event of a dispute (id. at p. 1038). We remanded the case to the trial court to determine whether the fee charged by the deposition reporter, Coast Court Reporters, Inc. (Coast), to plaintiffs Porfirio and Lourdes Serrano was unreasonable. On remand, the trial court ruled that the fee was unreasonable.
Thereafter, plaintiffs sought their attorney fees under the private attorney general statute, Code of Civil Procedure section 1021.5 (section 1021.5) from Coast. The trial court denied the fee request relying on the Supreme Court's decision in Adoption of Joshua S. (2008) 42 Cal.4th 945 [70 Cal.Rptr.3d 372, 174 P.3d 192] (Joshua S.), which prohibits the award of private attorney general fees under section 1021.5 "against an individual who has done nothing to adversely affect the rights of the public or a substantial class of people other than raise an issue in the course of private litigation that could establish legal precedent adverse to a portion of the public ...." (Joshua S., supra, at p. 949.) As set forth below, our review is deferential. We affirm the denial of private attorney general fees because the trial court's ruling was within the bounds of reason.

FACTUAL AND PROCEDURAL BACKGROUND

1. Serrano I

A detailed recitation of the facts and proceedings leading to the first appeal is set forth in Serrano I, supra, 162 Cal.App.4th at pages 1021 to 1025. Briefly, plaintiffs brought a personal injury action against a defendant with whom they subsequently settled. While the action was pending, the defendant took the deposition of one of the plaintiffs' experts and designated Coast as the deposition reporter. Plaintiffs' attorney requested a certified copy. When the defendant requested that the transcript be prepared on an expedited basis, Coast asked plaintiffs' counsel if he too wanted his certified copy to be expedited. Plaintiffs' counsel did. Thereafter, Coast billed plaintiffs' counsel for the transcript and added a fee for expediting the copy. Plaintiffs' counsel protested the expedition fee. Believing this fee to be proper, Coast responded that counsel would not receive the transcript on an expedited basis without payment of the fee. Plaintiffs then applied ex parte to the trial court in the underlying action for an order requiring Coast to provide a copy of the expert's deposition transcript without charging the expedition fee. Other depositions were being taken and so "[plaintiffs] and Coast agreed that the court would determine `the validity and reasonableness' of the expedited *183 service fee and that the ruling would govern the fees for all other deposition transcripts in this action. Based on that agreement, Coast waived its COD requirement and delivered copies of the deposition transcripts to [plaintiffs'] counsel." (Id. at p. 1021, fn. omitted.)
The trial court found Coast's practice of charging the nonnoticing party a substantial expedition fee to be "unconscionable" but, pursuant to Urban Pacific Equities Corp. v. Superior Court (1997) 59 Cal.App.4th 688 [69 Cal.Rptr.2d 635], it believed it had no authority to require a deposition reporter to charge other than what the market would allow. (Serrano I, supra, 162 Cal.App.4th at p. 1024.) The court ordered plaintiffs to pay the full expedition fee charged for all depositions. (Ibid.) Plaintiffs paid the amount and sought review by means of an extraordinary writ. We summarily denied the writ. (Id. at pp. 1024-1025.)
In the course of plaintiffs' ensuing appeal, we solicited briefing from amici curiae. Three court reporter associations filed amicus curiae briefs on behalf of Coast. Coast argued, while a trial court may order a deposition reporter to deliver copies of a deposition transcript to a nonnoticing party and the nonnoticing party must pay for it, that the trial court had no authority to "`regulate the amount of' the fee." (Serrano I, supra, 162 Cal.App.4th at p. 1035.) We disagreed. Based on Code of Civil Procedure sections 2025.510, subdivision (c), 2025.570, subdivision (a), and 128, subdivision (a)(5), we held that trial courts have the power to require a deposition reporter to provide a copy of a deposition transcript to a nonnoticing party for a reasonable fee and that in the event of a dispute, the trial court was empowered to determine the amount of a reasonable fee. (Serrano I, supra, at pp. 1037-1039.) We did not hold that expedition fees were per se unreasonable. Rather, we stated: "This does not preclude a deposition reporter from charging a reasonable fee for expediting the making, certification, and delivery of a copy. Although the reporter ordinarily sets the fee in the first instance, the reasonableness of the `expense' [citation] that a court may require a party to pay to obtain a copy of the transcript in a pending action is a question within the sound discretion of the trial court." (Id. at p. 1038.) We remanded the case to the trial court to exercise its discretion to determine whether Coast's fees were reasonable. (Id. at p. 1040.)

2. Remand after Serrano I
On remand, Coast argued that its expedition fee was reasonable. Plaintiffs countered that the entire fee was unreasonable. The trial court ruled that, "under the circumstances presented," Coast's entire expedition charge was *184 unreasonable. The court ordered that amount refunded to plaintiffs. Coast promptly paid that amount plus prejudgment interest.[1]

3. The instant motion for attorney fees (§ 1021.5)

Thereafter, plaintiffs sought their attorney fees from Coast pursuant to section 1021.5. Relying on Joshua S., supra, 42 Cal.4th 945, the trial court denied the fee motion. It explained: "I'm not here to try to take over an industry. I'm not here to regulate an industry. I'm just concerned with this case and the expedited charges." The court's order states: Plaintiffs were "not trying to vindicate the public's interest. Rather, [they were] trying to protect [their] own interest and in so doing, by virtue of a published opinion, [they] conferred a benefit to litigants." Plaintiffs filed a timely notice of appeal.

CONTENTION
Plaintiffs contend that the trial court erred in denying their section 1021.5 attorney fee motion.

DISCUSSION

1. The guiding principles for applications for private attorney fees under section 1021.5

(1) Codified in section 1021.5, the private attorney general doctrine, under which attorney fees may be awarded to successful litigants, "rests upon the recognition that privately initiated lawsuits are often essential to the effectuation of the fundamental public policies embodied in constitutional or statutory provisions, and that, without some mechanism authorizing the award of attorney fees, private actions to enforce such important public policies will as a practical matter frequently be infeasible. [Citations.]" (Woodland Hills Residents Assn., Inc. v. City Council (1979) 23 Cal.3d 917, 933 [154 Cal.Rptr. 503, 593 P.2d 200] (Woodland Hills).) "`In short, section 1021.5 acts as an incentive for the pursuit of public interest-related litigation that might otherwise have been too costly to bring. [Citations.]'" (Punsly v. Ho (2003) 105 Cal.App.4th 102, 109 [129 Cal.Rptr.2d 89], italics added.)
"Eligibility for section 1021.5 attorney fees is established when `(1) plaintiffs' action "has resulted in the enforcement of an important right affecting the *185 public interest," (2) "a significant benefit, whether pecuniary or nonpecuniary has been conferred on the general public or a large class of persons" and (3) "the necessity and financial burden of private enforcement are such as to make the award appropriate."'" (Joshua S., supra, 42 Cal.4th at pp. 951-952, fn. omitted, quoting Woodland Hills, supra, 23 Cal.3d at p. 935.)[2] Because section 1021.5 "states the criteria in the conjunctive, each of the statutory criteria must be met to justify a fee award. [Citations.]" (County of Colusa v. California Wildlife Conservation Bd. (2006) 145 Cal.App.4th 637, 648 [52 Cal.Rptr.3d 1].) The burden is on the claimant in the trial court to establish each prerequisite to an award of attorney fees under section 1021.5. (Ryan v. California Interscholastic Federation (2001) 94 Cal.App.4th 1033, 1044 [114 Cal.Rptr.2d 787]; Consumer Cause, Inc. v. Mrs. Gooch's Natural Food Markets, Inc. (2005) 127 Cal.App.4th 387, 401 [25 Cal.Rptr.3d 514].)
Generally, "[d]ecisions awarding or denying attorneys' fees are reviewed under an abuse of discretion standard." (City of Santa Monica v. Stewart (2005) 126 Cal.App.4th 43, 82 [24 Cal.Rptr.3d 72].) "Whether the moving party has proved each of these prerequisites for an award of attorney fees pursuant to section 1021.5 is best decided by the trial court, and the trial court's judgment on this issue must not be disturbed on appeal `unless the appellate court is convinced that it is clearly wrong and constitutes an abuse of discretion.' [Citations.]" (Family Planning Specialists Medical Group, Inc. v. Powers (1995) 39 Cal.App.4th 1561, 1567 [46 Cal.Rptr.2d 667].) This standard is deferential. Thereunder, "`"[t]o be entitled to relief on appeal... it must clearly appear that the injury resulting from such a wrong is sufficiently grave to amount to a manifest miscarriage of justice...."' [Citation.] ... `... [R]eversal is appropriate "where no reasonable basis for the action is shown." [Citation.]' [Citations.]" (Baggett v. Gates (1982) 32 Cal.3d 128, 143 [185 Cal.Rptr. 232, 649 P.2d 874].)
Some courts have applied a de novo standard of review when the appellate court publishes an opinion in the case. (Cf. Los Angeles Police Protective League v. City of Los Angeles (1986) 188 Cal.App.3d 1, 7-8 [232 Cal.Rptr. 697].) When an appellate court issues an opinion, it is arguably in as good a position as the trial court to determine whether the legal right enforced *186 through its opinion meets any of the three criteria of section 1021.5. (See Los Angeles Police Protective League v. City of Los Angeles, supra, at p. 8.) And, a "`de novo review of such a trial court order is warranted where the determination of whether the criteria for an award of attorney fees and costs in this context have been satisfied amounts to statutory construction and a question of law.'" (Connerly v. State Personnel Bd. (2006) 37 Cal.4th 1169, 1175 [39 Cal.Rptr.3d 788, 129 P.3d 1].) As explained below, under either standardabuse of discretion or de novothe trial court's ruling must be affirmed.

2. The Supreme Court in Joshua S. established the applicable criteria here for determining under section 1021.5 whether the litigation "has resulted in the enforcement of an important right affecting the public interest."

As noted, if any of the section 1021.5 elements is not met, then the fee award is not justified. (County of Colusa v. California Wildlife Conservation Bd., supra, 145 Cal.App.4th at p. 648.) We agree with the trial court that plaintiffs here failed to meet the first element. That is, plaintiffs did not demonstrate that their action resulted in the enforcement of an important right affecting the public interest. (Joshua S., supra, 42 Cal.4th at pp. 951-952.) Stated otherwise, the Supreme Court's explication in Joshua S. indicates that the dispute here over expedition fees did not amount to public interest litigation. Where the trial court's ruling denying the attorney fee request was entirely consistent with Joshua S., it was not an abuse of discretion.
Joshua S. involved a dispute between a same-sex couple that had engaged in a practice known as "second parent" adoption, in which the same-sex partner of a birth mother adopted the child, while the birth mother retained her parental rights. After the couple's relationship ended, the birth mother challenged her former partner's adoption of the second child, Joshua, by arguing, inter alia, that the form of adoption had no legal basis. (Joshua S., supra, 42 Cal.4th at p. 950.) The prior case concluded in a Supreme Court opinion that upheld second parent adoptions. (Ibid.) Thereafter, the prevailing adoptive mother moved for section 1021.5 attorney fees on the basis that she had prevailed in the Supreme Court on "an issue of benefit to a large class of persons." (42 Cal.4th at p. 950.)
(2) The Supreme Court concluded that attorney fees under section 1021.5 were not appropriately awarded because the losing party birth mother was "not the type of party on whom private attorney general fees were intended to *187 be imposed." (Joshua S., supra, 42 Cal.4th at p. 953.) With respect to the behavior of the party charged with paying attorney fees, according to the Supreme Court's review of the case law, "in virtually every published case in which section 1021.5 attorney fees have been awarded, the party on whom the fees have been imposed had done something more than prosecute or defend a private lawsuit, but instead had engaged in conduct that in some way had adversely affected the public interest." (Joshua S., supra, at p. 954, italics added; see id. at p. 955, fn. 3 [citing cases].) That is, the "public interest litigation obtained a substantial benefit by causing a change in the defendant's behavior, whose actions or failure to act was somehow impairing the statutory or constitutional rights of the public or a significant class of people." (Id. at pp. 954-955, italics added.)
(3) The court also found support for its interpretation of public interest litigation such as would justify section 1021.5 attorney fees in the statute's legislative history. "[T]he Legislature was focused on public interest litigation in the conventional sense: litigation designed to promote the public interest by enforcing laws that a governmental or private entity was violating, rather than private litigation that happened to establish an important precedent." (Joshua S., supra, 42 Cal.4th at p. 956, italics added, citing Sen. Com. on Judiciary, Rep. on Assem. Bill No. 1310 (1977-1978 Reg. Sess.) as amended May 18, 1977, p. 1 and Sen. Com. on Judiciary, Hearing on Assem. Bill No. 1310 (1977-1978 Reg. Sess.) Aug. 14, 1977, testimony of John R. Phillips, p. 15.) The court explained, "[t]he enforcement of an important right affecting the public interest implies that those on whom attorney fees are imposed have acted, or failed to act, in such a way as to violate or compromise that right, thereby requiring its enforcement through litigation. It does not appear to encompass the award of attorney fees against an individual who has done nothing to curtail a public right other than raise an issue in the context of private litigation that results in important legal precedent." (Joshua S., supra, at p. 956.) The court noted that "attorney fees have been awarded to those defending against suits by public entities, or those purporting to represent the public, that seek to expand the government's power to curtail important public rights. [Citation.]" (Id. at p. 957, italics added.) Recognizing "in some cases the litigation underlying the section 1021.5 award can involve rights or benefits that are somewhat intangible, such as clarifying important constitutional principles," the Supreme Court explained that, "even in such cases, the party against whom the fees are awarded is responsible in some way for the violation of those rights and principles. [Citation.]" (Joshua S., supra, at p. 958, italics added.)
(4) The Joshua S. court viewed the birth mother, the person from whom the prevailing party sought to recover fees, as "a private litigant with no *188 institutional interest in the litigation, and the judgment she sought in the present case would have settled only her private rights and those of her children and [the prevailing party adoptive mother]. She simply raised an issue in the course of that litigation that gave rise to important appellate precedent decided adversely to her." (Joshua S., supra, 42 Cal.4th at p. 957, fn. omitted.) Courts may consider whether the litigation generated important appellate precedent when determining whether the litigation enforced an important right affecting the public interest. (Id. at p. 958.) "But even when an important right has been vindicated and a substantial public benefit conferred, and when a plaintiff's litigation has transcended her personal interest, we conclude that section 1021.5 was not intended to impose fees on an individual seeking a judgment that determines only his or her private rights, but who has done nothing to adversely affect the public interest other than being on the losing side of an important appellate case." (Joshua S., supra, at p. 958, italics added.)

3. Joshua S. is on point and is controlling Supreme Court precedent.

Serrano I is analogous to the prior litigation in Joshua S. (Sharon S. v. Superior Court (2003) 31 Cal.4th 417 [2 Cal.Rptr.3d 699, 73 P.3d 554]) and Coast is in the same position as the birth mother in that case. The trial court here denied plaintiffs' motion for private attorney general fees under section 1021.5 on remand, finding that in seeking an order for Coast to provide a copy of the deposition transcript without charging the expedited-service fee, plaintiffs were trying to protect their own private interest and not seeking to vindicate an important right affecting the public interest. As explained, our review is deferential. We affirm the denial of attorney fees because the trial court's ruling was clearly correct and well within the bounds of its discretion.
(5) The trial court here did not abuse its discretion in concluding that Serrano I was a private dispute, not public interest litigation, notwithstanding our decision to publish Serrano I did have, as plaintiffs characterize it: a "public effect." "Although `it is a built-in consequence of [the Anglo-American principle of] stare decisis that "a legal doctrine established in a case involving a single litigant characteristically benefits all others similarly situated"' (Dawson, [Lawyers and Involuntary Clients in] Public Interest Litigation [(1975)] 88 Harv.L.Rev. 848, 918 ...), the doctrine of stare decisis has never been viewed as sufficient justification for permitting an attorney to obtain fees from all those who may, in future cases, utilize a precedent he has helped to secure. [Citations.]" (Woodland Hills, supra, 23 Cal.3d at p. 946.)
*189 (6) At issue in Serrano I was a private business disagreement between plaintiffs and Coast onlynot the entire deposition reporting industryover the fees one side of the arrangement sought to charge the other side for services provided in the course of a larger personal injury lawsuit. (Joshua S., supra, 42 Cal.4th at p. 953.) That private dispute raised an issue that resulted in a published appellate opinion. But, that dispute did not arise from an attempt to curtail any conduct on the part of Coast that was infringing a statutory or public right or violating a constitutional principle. Indeed, as we noted twice in Serrano I, Coast waived its fees and delivered all of the deposition transcripts to plaintiffs pending the trial court's determination of the reasonableness of the expedited-service fee. (Serrano I, supra, 162 Cal.App.4th at pp. 1020, 1021.) Coast merely raised the argument that it, not the trial court, had the right to regulate the fees it charged. Although the dispute in Serrano I happened to result in legal precedent, and even though we happened to request amici curiae briefs, Serrano I did not transform this private disagreement over an invoice into public interest litigation because Coast was not purporting to represent the public and its conduct addressed in our opinion had not been impairing the statutory or constitutional rights of the public or even a large or significant class of people. (Joshua S., supra, at pp. 954-955; Woodland Hills, supra, 23 Cal.3d at p. 946.) Indeed, our opinion in Serrano I did not pronounce a rule that all expedition fees are unreasonable; we merely clarified that the trial court had the power and discretion to determine the reasonableness of the particular fee that Coast was charging plaintiffs in this specific case. (Serrano I, supra, at p. 1038.) The proceeding in Serrano I settled only plaintiffs' and Coast's private rights. Accordingly, the trial court acted within the bounds of reason in denying plaintiffs' attorney fees request. The trial court's determination that Serrano I did not result in enforcement of an important public right is entitled to deference and is easily upheld.

4. Under our independent analysis, Serrano I was not public interest litigation for purposes of section 1021.5 as explicated by Joshua S.
We may determine de novo whether our own opinion enforced a legal right that meets the criteria of section 1021.5. Serrano I did not result in the clarification or enforcement of an important public right or a constitutional principle as described by Joshua S. This court's earlier decision in Serrano I did not create new law or extend existing law. Our opinion merely reiterated the state of statutory authority (Code Civ. Proc., §§ 2025.510, subd. (c), 2025.570, subd. (a), 128), which empowers trial courts to regulate deposition fees. Nor did our opinion pronounce a new principle. Trial courts have long had the inherent power generally to control the conduct of ministerial officers *190 and others connected with judicial proceedings. (Code Civ. Proc., § 128.) The trial court in Serrano I misunderstood its power and believed itself constrained by Urban Pacific Equities Corp. v. Superior Court, supra, 59 Cal.App.4th 688. Serrano I gave guidance by disagreeing with Urban and explicating the court's power. Therefore, we merely corrected a garden-variety error by a trial court that had mistakenly believed it lacked the authority to limit court reporter fees, with the result that Serrano I did not enforce a fundamental public right or constitutional principle that was being infringed by Coast.[3]
For these reasons, we reject plaintiffs' contention that, unlike Joshua S., this case "implicate[s] ongoing adverse impact to the public." Although vague, it appears that plaintiffs also argue that the trial court misread Joshua S. and ignored plaintiffs' mixed motives both to protect their own rights and to vindicate a public right. However, a similar argument, namely, that the attorney was motivated to defend a public right, was not successful in Joshua S. (42 Cal.4th at p. 951.) Moreover, we review a trial court's "actual ruling, not its reasons" (Punsly v. Ho, supra, 105 Cal.App. at p. 113), and plaintiffs have not persuaded us that the trial court was clearly wrong. Joshua S. is on point as it discusses what sort of action gives rise to "public interest litigation" such as would justify the imposition of fees against the losing party. That case is not limited to adoptions.
To summarize, the trial court's determination that Serrano I was private litigation and did not result in the enforcement of an important public right is entitled to deference and is handily affirmed. Our independent review of our own opinion confirms the trial court's conclusion that Serrano I was not public interest litigation. As we conclude that the trial court did not abuse its discretion in denying plaintiffs private attorney general fees because plaintiffs had failed to show the first element of the section 1021.5 test (County of Colusa v. California Wildlife Conservation Bd., supra, 145 Cal.App.4th at p. 648), we need not address plaintiffs' contentions touching on the remaining elements of the test.

*191 DISPOSITION
The order is affirmed. Respondent to recover costs of appeal.
Klein, P. J., concurred.
CROSKEY, J., Dissenting.
I respectfully dissent.
I believe the trial court read the Supreme Court's opinion in Adoption of Joshua S. (2008) 42 Cal.4th 945 [70 Cal.Rptr.3d 372, 174 P.3d 192] (Joshua S.) too broadly, and our prior opinion in Serrano v. Stefan Merli Plastering Co., Inc. (2008) 162 Cal.App.4th 1014 [76 Cal.Rptr.3d 559] (Serrano I) too narrowly. An award of attorney fees under Code of Civil Procedure section 1021.5 (section 1021.5) is not inappropriate in this case. Therefore, I would reverse.

1. Serrano I

We held in Serrano I that the court in a pending action has the authority to require a deposition reporter to provide a copy of a transcript to a nonnoticing party for a reasonable fee. This is so because a deposition reporter acting, as Coast Court Reporters, Inc. (Coast), did, as a deposition officer, is a ministerial officer of the court. (Serrano I, supra, 162 Cal.App.4th at p. 1035.)
A deposition must be conducted under the supervision of a deposition officer who is authorized to administer an oath. (Code Civ. Proc., § 2025.320.) The deposition testimony must be recorded stenographically, unless the parties agree or the court orders otherwise. (Code Civ. Proc., § 2025.320.) In this case, Coast followed the common practice of acting as both deposition officer and certified shorthand reporter. (Serrano I, supra, 162 Cal.App.4th at p. 1033.) The Code of Civil Procedure imposes certain obligations of nonbias and objectivity on deposition officers. (Code Civ. Proc., § 2025.320.) In addition, Code of Civil Procedure section 2025.570, subdivision (a) provides, in pertinent part, "unless the court issues an order to the contrary, a copy of the transcript of the deposition testimony made by, or at the direction of, any party, ... if still in the possession of the deposition officer, shall be made available by the deposition officer to any person requesting a copy, on payment of a reasonable charge set by the deposition officer."
*192 In this case, Coast violated its statutory duty as a deposition officer by refusing to deliver copies of its transcripts without payment of an unreasonable fee.[1] Thus, Serrano I did not resolve a mere dispute between private parties regarding the reasonableness of a fee, but a dispute between a party to a litigation in the California courts and the deposition officer who was undermining that party's ability to prepare for trial by violating its own statutory duties.

2. Joshua S.

In Joshua S., the Supreme Court concluded that section 1021.5 fees are not appropriately awarded against a party who "only engaged in litigation to adjudicate private rights from which important appellate precedent happens to emerge, but has otherwise done nothing to compromise the rights of the public or a significant class of people." (Joshua S., supra, 42 Cal.4th at p. 954.) The court reasoned that the unspoken justification for section 1021.5 fees "is that it is equitable to impose public interest attorney fees on parties that have done something to adversely affect the public interest," and that this requires something more than merely prosecuting or defending a lawsuit. (42 Cal.4th at p. 954.)
The court also recognized that, as a general rule, in cases where section 1021.5 fees have been awarded, the litigation "obtained a substantial benefit by causing a change in the defendant's behavior, whose actions or failure to act was somehow impairing the statutory or constitutional rights of the public or a significant class of people." (Joshua S., supra, 42 Cal.4th at pp. 954-955.) The court then identified many of these prior cases in a lengthy footnote. (Id. at p. 955, fn. 3.) These cases included litigation against private defendants, where the only wrongdoing by the defendants was against their own customers (e.g., Colgan v. Leatherman Tool Group, Inc. (2006) 135 Cal.App.4th 663, 682-693 [38 Cal.Rptr.3d 36] [corporation labelled its products in violation of the false advertising law]; Beasley v. Wells Fargo Bank (1991) 235 Cal.App.3d 1407, 1412 [1 Cal.Rptr.2d 459], disapproved on other grounds in Olson v. Automobile Club of Southern California (2008) 42 Cal.4th *193 1142 [74 Cal.Rptr.3d 81, 179 P.3d 882] [bank improperly assessed fees against its credit card customers who failed to make timely payments or exceeded their credit limits]). Thus, it is clear that when the court spoke of defendants "whose actions or failure to act was somehow impairing the statutory or constitutional rights of the public or a significant class of people," the court was not restricting the application of section 1021.5 to public entities or those who violate the rights of the general public. Indeed, the Supreme Court was not restricting the application of section 1021.5, as it had been applied by the courts, at all; it was simply recognizing that all previous parties charged with fees under section 1021.5 had been parties who had engaged in some actual wrongdoing, and had not simply raised an issue in litigation which resulted in important appellate precedent.
Finally, the court pointed to the language of section 1021.5 which creates the first element of the test for attorney fees: that the action "has resulted in the enforcement of an important right affecting the public interest." The court focused on the word "enforcement," and concluded that "[t]he enforcement of an important right affecting the public interest implies that those on whom attorney fees are imposed have acted, or failed to act, in such a way as to violate or compromise that right, thereby requiring its enforcement through litigation. It does not appear to encompass the award of attorney fees against an individual who has done nothing to curtail a public right other than raise an issue in the context of private litigation that results in important legal precedent." (Joshua S., supra, 42 Cal.4th at p. 956.) In short, the court was persuaded that "the parties against whom attorney fees should be assessed should be those responsible for the policy or practice adjudged to be harmful to the public interest." (Id. at p. 957.)
In sum, the court held that "even when an important right has been vindicated and a substantial public benefit conferred, and when a plaintiff's litigation has transcended her personal interest, ... section 1021.5 was not intended to impose fees on an individual seeking a judgment that determines only his or her private rights, but who has done nothing to adversely affect the public interest other than being on the losing side of an important appellate case." (Joshua S., supra, 42 Cal.4th at p. 958.)

3. Joshua S. Does Not Bar an Award of Attorney Fees in This Case

In the instant case, Coast argues that it is in the same position as the birth mother in Joshua S., as it did nothing to adversely affect the public interest, or a significant class of people, other than attempt to defend its expedition fees and ultimately be on the losing side of Serrano I. We disagree. Coast overlooks that it refused to deliver copies of its transcripts without payment of an unreasonable fee. As we stated in Serrano I, "For a deposition reporter *194 to refuse to provide a copy of a transcript to a nonnoticing party in a pending action unless the party agrees to pay an unreasonable fee would be grossly unfair. Moreover, for a deposition reporter, as an officer of the court, to engage in such conduct would be an abuse of the reporter's authority." (Serrano I, 162 Cal.App.4th at p. 1036.) Coast did exactly that.[2] A deposition reporter which abuses its authority by withholding copies of its transcripts unless an unreasonable fee is paid has done an act which adversely affects the public interest.[3]
To be sure, Serrano I involved more than whether a deposition reporter could withhold a transcript copy unless paid an unreasonable fee; the opinion also established a trial court's jurisdiction and authority to determine the reasonableness of the fee in the pending proceeding (even though the deposition reporter, while an officer of the court, was not a party to the action). Had this latter issue been the sole issue before us in Serrano I, and Coast had not charged an unreasonable fee or had not withheld the transcript, Coast would have a potentially viable argument that it falls within the scope of the rule of Joshua S. But this is not a case in which Coast simply litigated a private issue and ended up on the losing side of an opinion establishing trial court jurisdiction over deposition reporters' fees; Coast instead abused its authority as an officer of the court by holding a necessary transcript hostage while demanding an unreasonable fee. It is therefore not entitled to the benefit of the Joshua S. opinion. To the extent the trial court concluded otherwise, I believe it erred as a matter of law.[4]
*195 I would therefore reverse and remand for a determination of whether plaintiffs are entitled to attorney fees under each of the elements which must be established for an award of fees pursuant to section 1021.5. (See Joshua S., supra, 42 Cal.4th at pp. 951-952; Los Angeles Police Protective League v. City of Los Angeles (1986) 188 Cal.App.3d 1, 6 [232 Cal.Rptr. 697].)
NOTES
[1] We denied Coast's petition for rehearing of Serrano I and the Supreme Court denied review and a request for depublication.
[2] Section 1021.5 reads in relevant part: "a court may award attorneys' fees to a successful party against one or more opposing parties in any action which has resulted in the enforcement of an important right affecting the public interest if: (a) a significant benefit, whether pecuniary or nonpecuniary, has been conferred on the general public or a large class of persons, (b) the necessity and financial burden of private enforcement, or of enforcement by one public entity against another public entity, are such as to make the award appropriate, and (c) such fees should not in the interest of justice be paid out of the recovery, if any."
[3] The dissent makes much of our observation in Serrano I that deposition reporters are ministerial officers of the court to argue that Coast's conduct in "holding a necessary transcript hostage while demanding an unreasonable fee" transforms this dispute into public interest litigation. (See dis. opn., post, at pp. 192, 194.) Yet, as noted, the fee Coast charged was not unreasonable until the trial court ruled it so, and once the dispute arose between Coast and plaintiffs, Coast waived its fee and provided the deposition transcripts pending resolution of the disagreement by the trial court. Therefore, the fact that deposition reporters are ministerial officers of the court does not transform this disagreement into public interest litigation.
[1] The majority makes much of the fact that Coast "waived its fees and delivered all of the deposition transcripts to plaintiffs pending the trial court's determination of the reasonableness of the expedited-service fee." (Maj. opn., ante, at p. 189.) Yet Coast initially charged the unreasonable fee, then, when plaintiffs protested, Coast stated that "counsel would receive a certified copy of the transcript on an expedited basis only upon payment of the additional fee." (Serrano I, supra, 162 Cal.App.4th at p. 1021.) Coast did not agree to deliver the transcripts without payment of the fee until after plaintiffs had sought ex parte relief, and the court had set the matter for a further hearing on the validity and reasonableness of the fee. (Ibid.) Agreeing to provide the transcripts without payment of the fee pending trial court resolution of the issue does not erase the fact that Coast violated its statutory duty by initially refusing to provide the transcripts until it was paid its unconscionable fee.
[2] We held in Serrano I that withholding a transcript unless a party agreed to pay an unreasonable fee would be "an abuse of the reporter's authority," and a violation of statutory requirements which, when read together, require that copies be provided for a reasonable fee (Code Civ. Proc., §§ 2025.510, subd. (c), 2025.570, subd. (a)). What had not been established was whether Coast's fee had, in fact, been unreasonable. Once the trial court concluded that Coast's fee was unreasonable in its entirety, it was necessarily established that Coast had abused its authority and violated the statutory requirements.
[3] As Coast represented that the fee it charged plaintiffs was its standard fee for an expedited transcript copy, the conclusion that Coast's conduct adversely affected all nonparties who sought expedited transcript copies from Coast, and not merely the plaintiffs in this action, is inescapable.
[4] I believe the trial court further erred in its apparent reliance on the plaintiffs' initial motives. That is, the court stated, "Moving party was not trying to vindicate the public's interest. Rather [they were] trying to protect [their] own interest and in so doing, by virtue of a published opinion, [they] conferred a benefit to litigants." But whether a plaintiff pursued an action with the subjective motivation of benefitting himself or the public is not a controlling factor in determining whether the plaintiff is entitled to fees under section 1021.5. (Satrap v. Pacific Gas & Electric Co. (1996) 42 Cal.App.4th 72, 77 [49 Cal.Rptr.2d 348].) Joshua S. did not consider, or change, controlling law regarding the inapplicability of evidence of motive, rather, it rejected the attorney fee claim despite a substantial widespread public benefit because the party against whom fees were sought had done nothing wrong. In any event, even if plaintiffs' motivation in initially challenging the fees was purely selfish, there can be no doubt that their motivation in pursuing the issue on appeal was not. No party would spend over $100,000 to litigate $2,872 in deposition fees if motivated purely by its own financial interest.