KENNARD, J., Dissenting.
California follows the American rule, under which each party to litigation must generally pay its own attorney fees. (Code Civ. Proc., § 1021.) California’s private attorney general law (id., § 1021.5), however, sets forth an exception, stating that, if certain specified conditions are met, “a court may award attorneys’ fees ... in any action which has resulted in the enforcement of an important right affecting the public interest . . . .”
Here, defendant scheduled the deposition of plaintiffs’ expert witness and hired a local deposition reporter to record the deposition and prepare a certified transcript on an expedited basis. After the deposition was completed, plaintiffs requested a certified copy of the transcript, also on an expedited basis. The reporter’s invoice, sent to plaintiffs’ counsel, included a $261.56 surcharge for expediting its service. Plaintiffs challenged the surcharge in the trial court. The reporter provided the transcript, agreeing to defer payment of the surcharge until after the trial court’s ruling.
Relying on a published Court of Appeal decision, the trial court ruled that it had no authority to regulate the fees charged by deposition reporters. Plaintiffs appealed, and the Court of Appeal held in a published decision that trial courts do have authority to regulate reporter fees. Plaintiffs then sought $50,000 in attorney fees under the private attorney general law, arguing that *1031 the litigation against the deposition reporter enforced an important right affecting the public interest and conferred a significant benefit on the general public. In this court, the majority upholds the appropriateness of an attorney fees award. I disagree.
I.
An adequate understanding of the issue requires a detailed statement of the relevant facts, as summarized below.
The underlying dispute was a personal injury lawsuit that eventually settled. In the course of litigating that dispute, defendant hired Coast Court Reporters, Inc., to stenographically record the deposition of plaintiffs’ expert witness and to prepare a certified transcript of the deposition on an expedited basis. The deposition was held on Monday, June 26, 2006. Two days later, plaintiffs' counsel requested a certified copy of the transcript, also on an expedited basis, using an order form that stated: “Transcripts may be sent C.O.D. [(collect on delivery)].” In signing the order form, plaintiffs’ counsel expressly agreed “to provide payment in full . . . upon request.”
The completed transcript was ready on Friday, June 30, four days after the deposition. The transcript was 141 pages, and the exhibits were 28 pages. Coast charged plaintiffs’ counsel $373.65 for the certified copy of the transcript ($2.65 per page), $14 for the exhibits ($0.50 per page), and an “expedited charge” of $261.56 (70 percent of the base charge for the transcript). The total amount billed was less than half the amount that Coast had charged defendant for the expedited original transcript.
Coast faxed its invoice to plaintiffs’ counsel on June 30, the Friday before the Fourth of July weekend,[1] with a notation that Coast would e-mail a copy of the transcript when it received a faxed copy of the payment check. Within two hours, plaintiffs’ counsel faxed a letter to Coast, objecting to the “expedited charge” and saying, “we [did not] request that the transcript be expedited.” Coast responded the same day with a faxed letter stating: “Our normal turnaround on transcripts is ten business days. We are happy to put your certified copy order to the head of the queue and deliver it on an expedited basis, but there is an additional charge . . . associated with this special request. [][]... Please notify me by 5:00 p.m. today as to how you would like to proceed.” Coast did not receive any response by 5:00 p.m. and did not e-mail the copy of the transcript. That evening, long after business *1032 hours, plaintiffs’ counsel responded with a faxed letter notifying Coast that plaintiffs intended to seek the trial court’s intervention regarding the “expedited fees.”
The Fourth of July weekend followed. At 8:30 a.m. on July 5, 2006, plaintiffs applied ex parte to the trial court for an order requiring Coast to provide the copy of the transcript “without charging any expedited fees.” In the accompanying declaration, plaintiffs’ counsel admitted that, contrary to the statement in the faxed letter, he had asked Coast to expedite preparation of the transcript.
At the hearing on July 5, the trial court continued the matter to July 20, to allow time for briefing. Coast agreed to provide the transcript (and future deposition transcripts) without payment of its fees, pending the trial court’s resolution of the disputed charge. On July 20, the trial court denied plaintiffs’ request to disallow that charge. Citing Urban Pacific Equities Corp. v. Superior Court (1997) 59 Cal.App.4th 688 [69 Cal.Rptr.2d 635] (Urban Pacific), the trial court concluded that it had no power to reduce the reporter’s fee. In Urban Pacific, the Court of Appeal said: “[T]here is no statute regulating the fees charged by private reporting firms, and deposition reporters are free to charge all the market will bear.” (Id. at pp. 691-692, italics added.) Relying on that statement, the trial court here ordered plaintiffs to pay in full Coast’s charge. Plaintiffs did so, then appealed.
Expressly disagreeing with the statement quoted above from Urban Pacific, supra, 59 Cal.App.4th at pages 691-692, the Court of Appeal in this case concluded that the trial court had erred. (Serrano v. Stefan Merli Plastering Co., Inc. (2008) 162 Cal.App.4th 1014, 1037-1038 [76 Cal.Rptr.3d 559] (Stefan Merli I).) Noting that deposition reporters are ministerial officers of the court (id. at p. 1035), the Court of Appeal held that the trial court, as part of its authority to control the conduct of its ministerial officers (Code Civ. Proc., § 128, subd. (a)(5)),[2] had authority to regulate the charges of a deposition reporter (Stefan Merli I, at pp. 1038-1039).
On remand, the trial court determined that Coast’s fee to plaintiffs for expediting the certified copy of the transcript was unreasonable, and it ordered Coast to return to plaintiffs, with interest, the amount paid. The court explained: “I’m not here to regulate an industry. I’m just concerned with this case and the expedited charges. And the Court of Appeal said [Coast is] not entitled to an expedited cost.” Coast did not appeal the trial court’s decision, which concerned only a small sum.
Having prevailed regarding the $261.56 surcharge, plaintiffs then asked the trial court for an award of $50,000 in attorney fees under the private attorney *1033 general provision set forth in section 1021.5. Plaintiffs argued that their action against Coast had conferred a significant benefit on the general public by culminating in a published Court of Appeal decision (Stefan Merli I, supra, 162 Cal.App.4th 1014) establishing the authority of trial courts to regulate deposition reporter fees.
In denying plaintiffs’ request for attorney fees, the trial court relied on this court’s statement in Adoption of Joshua S. (2008) 42 Cal.4th 945, 949 [70 Cal.Rptr.3d 372, 174 P.3d 192] (Joshua S.), that “section 1021.5 does not authorize an award of attorney fees against an individual who has done nothing to adversely affect the rights of the public or a substantial class of people other than raise an issue in the course of private litigation that could establish legal precedent adverse to a portion of the public . . . .” Plaintiffs appealed, and in a two-to-one' decision, the Court of Appeal affirmed. Today, a majority of this court reverses that decision.
II.
As noted earlier, under California’s private attorney general law (§ 1021.5), “a court may award attorneys’ fees ... in any action which has resulted in the enforcement of an important right affecting the public interest . . . ,” provided certain specified conditions are met.[3] In holding that plaintiffs here are entitled to such attorney fees, the majority distinguishes Joshua S., supra, 42 Cal.4th 945, saying: “[0]n appeal Coast strenuously defended its institutional interest in controlling the fees charged to a nonnoticing party without judicial oversight. And the trial court determined . . . that Coast had indeed violated plaintiffs’ right to receive a transcript for a reasonable charge. Accordingly, ... we are presented with the usual circumstance where private attorney general fees are sought from a party ‘at least partly responsible for the policy or practice that gave rise to the litigation.’ ” (Maj. opn., ante, at pp. 1027-1028, quoting Connerly v. State Personnel Bd. (2006) 37 Cal.4th 1169, 1181 [39 Cal.Rptr.3d 788, 129 P.3d 1].)
I disagree with the majority’s holding. This court’s decision in Joshua S., supra, 42 CalAth 945, is directly on point.
*1034 The underlying issue in Joshua S., supra, 42 Cal.4th 945, was a second-parent adoption by a former domestic partner of the birth parent. (Second-parent adoption is a form of adoption in which the birth parent does not give up parental rights.) The first stage of the Joshua S. litigation culminated, under a different name, in an important decision of this court—Sharon S. v. Superior Court (2003) 31 Cal.4th 417 [2 Cal.Rptr.3d 699, 73 P.3d 554]— recognizing the validity of a particular category of second-parent adoption, namely, adoption by a person not married to the birth parent.
After the decision in Sharon S. v. Superior Court, supra, 31 Cal.4th 417, the adopting parent sought private attorney general fees under section 1021.5. This court held that an award of attorney fees was not authorized. It explained that, although the statutory requirements of section 1021.5 were otherwise satisfied, “section 1021.5 was not intended to impose fees on an individual seeking a judgment that determines only his or her private rights, but who has done nothing to adversely affect the public interest other than being on the losing side of an important appellate case.” (Joshua S., supra, 42 Cal.4th at p. 958.)
Pointing to section 1021.5’s requirement that the action must have “resulted-in the enforcement of an important right affecting the public interest,” Joshua S. concluded that the word “enforcement” implies that the losing party did something adverse to the interest of the general public. (Joshua S., supra, 42 Cal.4th at pp. 955-956.) In support, the decision looked to the legislative history of section 1021.5 and observed: “[T]he Legislature was focused on public interest litigation in the conventional sense: litigation designed to promote the public interest by enforcing laws that a governmental or private entity was violating, rather than private litigation that happened to establish an important precedent.” (Joshua S., supra, 42 Cal.4th at p. 956.) Joshua S. held that “attorney fees should not be imposed on ... an individual who has only engaged in litigation to adjudicate private rights from which important appellate precedent happens to emerge, but has otherwise done nothing to compromise the rights of the public or a significant class of people.” (Id. at p. 954, italics added.)
Like the birth mother in Joshua S., supra, 42 Cal.4th 945, here Coast did nothing “to compromise the rights of the public or a significant class of people.” First, because plaintiffs have made no showing that Coast was a large company with a significant share of the market for deposition-reporting services, it is reasonable to infer that Coast is a small, local business whose charges to its customers do not affect the rights of the public or a significant class of people.
Second, Coast was not responsible for the Court of Appeal’s statement in Urban Pacific, supra, 59 Cal.App.4th at pages 691-692, that deposition *1035 reporters are free to set their fees without trial court intervention. Because that appellate decision was the only case law on point at the time, Coast reasonably relied on it in the trial court.
Third, even under the Court of Appeal’s holding in Stefan Merli I, supra, 162 Cal.App.4th at pages 1037-1038, that a trial court has authority to determine the reasonableness of a deposition reporter’s charges (see p. 1022, ante), it is not clear that Coast ever charged an unreasonable fee to any of its customers, including plaintiffs. The trial court did not exercise any discretion in finding Coast’s fee to be unreasonable. Instead, the court told Coast’s attorney: “[T]he .Court of Appeal said you’re not entitled to an expedited cost,” noting the Court of Appeal’s statement that “a reasonable fee for a copy of the transcript would not include any amount that compensates the deposition reporter for the cost to expedite the transcription.” (Stefan Merli I, supra, 162 Cal.App.4th at p. 1038, italics added.) The trial court, however, misquoted that statement, inserting the word “transcript” in place of the word “transcription.” The word “transcription” in the Stefan Merli I decision (ibid.) referred narrowly to the process of transcribing stenographic notations into a fully written-out text, a process that must, by law, be charged to the party that noticed the deposition. (See § 2025.510, subd. (b).) But Stefan Merli I made clear that other tasks associated with preparing a certified copy of a transcript can be charged to the nonnoticing party. (Stefan Merli I, at p. 1038.)
If the trial court here had not misread the Court of Appeal’s opinion, it might have found Coast’s fee to be reasonable.[4] Coast produced for plaintiffs the certified copy of the transcript in four days instead of the usual 10, and its total charge was less than half of what it had charged defendant for the original. Plaintiffs made no evidentiary showing that Coast’s $261.56 surcharge for greatly expediting its service was unreasonable, while Coast presented evidence that the surcharge was appropriate. Under those circumstances, plaintiffs cannot be credited with “enforcing laws that a . . . private entity was violating.” (Joshua S., supra, 42 Cal.4th at p. 956.) Instead, this case like Joshua S. falls squarely in the category of “private litigation that happened to establish an important precedent.” (Ibid.)
As in Joshua S., supra, 42 Cal.4th 945, a private party litigated a private right (here, the right of deposition reporters to set fees without judicial oversight, as set forth in Urban Pacific, supra, 59 Cal.App.4th at pp. 691-692), and lost on appeal. As in Joshua S., the Court of Appeal decision established a precedent that benefitted the general public (here, by *1036 ensuring judicial oversight of deposition reporter fees). And as in Joshua S., the losing party in the underlying dispute (here, Coast) was not responsible for the policy that the Court of Appeal rejected (here, the statement in Urban Pacific, supra, 59 Cal.App.4th at p. 692, that “deposition reporters are free to charge all the market will bear”).
The majority asserts that Coast “strenuously” pursued its “institutional interest” (maj. opn., ante, at p. 1027), relying on language in Joshua S., supra, 42 Cal.4th at page 957, that there the attorney fees award was not appropriate because the losing party in the adoption dispute was a private litigant “with no institutional interest in the litigation.” But that comment in Joshua S. does not mean the converse, namely, that an award of private attorney general fees is appropriate no matter how small or minimal the institutional interest in the litigation. If here Coast’s ongoing business interest in the outcome of the litigation suffices to make it liable for attorney fees, then any party with a recurring interest in a matter is subject to an attorney fees award whenever that party loses on appeal in a published decision.
It is true that, as a deposition reporter, Coast was a ministerial officer of the court, with duties owed to the court and the public, in addition to its own private interests. (Maj. opn., ante, at pp. 1021, 1027-1028, 1029.) The transcripts that deposition reporters prepare are often critical to litigation involving millions (or billions) of dollars. That fact potentially gives the deposition reporter an unfair advantage when setting fees. The party that notices the deposition can negotiate a fair fee (or choose another deposition reporter if the fees demanded are too high), but once the noticing party has selected a deposition reporter and the deposition is completed, other parties have little choice other than to pay whatever fee that deposition reporter charges for copies of the transcript. Thus, some risk exists that a deposition reporter may inflate its charge for certified copies and discount its charge for the original, and in that way attract business. (See Saunders v. Superior Court (1994) 27 Cal.App.4th 832, 840-841 [33 Cal.Rptr.2d 438].) Here, however, Coast’s charge to plaintiffs for the certified copy of the deposition transcript was less than half of its charge for the original requested by defendant (see p. 1021, ante), and therefore it does not appear as a matter of law that Coast charged plaintiffs an unreasonable fee for expediting the certified copy.
Moreover, Coast did not otherwise breach its duty as an officer of the court. When plaintiffs challenged in the trial court Coast’s charge for expediting the deposition transcript, Coast did not withhold the transcript. Instead, Coast provided the expedited transcript to plaintiffs without payment, agreeing to submit the dispute over its charge to the trial court. Plaintiffs were only deprived of the transcript during the four-day Fourth of July weekend, and then only because on the Friday before the weekend, plaintiffs’ counsel told Coast “we [did not] request that the transcript be expedited,” thus *1037 implying that Coast’s normal 10-day delivery time would be acceptable. Plaintiffs could have received earlier delivery of the transcript had they paid the disputed charge, reserving the right to litigate the reasonableness of the charge.
For the reasons set forth above, I would affirm the judgment of the Court of Appeal.

 In 2006, the Fourth of July holiday fell on a Tuesday. It is likely that on the preceding Monday, many businesses were closed or operating with greatly reduced staff, thereby enabling most employees to enjoy a four-day weekend.

 All further statutory references are to the Code of Civil Procedure.

 Section 1021.5 provides in relevant part: “Upon motion, a court may award attorneys’ fees to a successful party against one or more opposing parties in any action which has resulted in the enforcement of an important right affecting the public interest if: (a) a significant benefit, whether pecuniary or nonpecuniary, has been conferred on the general public or a large class of persons, (b) the necessity and financial burden of private enforcement... are such as to make the award appropriate, and (c) such fees should not in the interest of justice be paid out of the recovery, if any.”

 Coast’s decision not to appeal the trial court’s decision in a matter involving only a few hundred dollars cannot be construed as a concession, for purposes of the attorney fees issue, that it acted unreasonably. (See, e.g., Parklane Hosiery Co. v. Shore (1979) 439 U.S. 322, 330 [58 L.Ed.2d 552, 99 S.Ct. 645].)